STATE of Iowa, Appellee,

v.

Loren Glen HUSS, Jr., Appellant.

No. 87–972.

Supreme Court of Iowa.

Oct. 19, 1988.

Rehearing Denied Nov. 18, 1988.

Raymond E. Rogers, Acting Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase and Thomas H. Miller, Asst. Attys. Gen., for appellee.

Considered by HARRIS P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

Appellant Loren Huss, Jr., was convicted, following jury trial, of the crime of first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1985). On appeal from judgment and sentence entered upon his conviction, Huss raises a solitary but significant question: Has he been twice brought to trial for the same offense? Our review of this troublesome record convinces us that he has, but we are likewise convinced that Huss' retrial was the product of a *sua sponte* mistrial declared in his sole interest, consistent with manifest justice. Accordingly, we reject Huss' claim of double jeopardy, and affirm the district court.

I. In May 1986, Loren Huss was charged with first-degree murder in the death of his former girlfriend, Marilyn Sheets. Huss timely notified the State of his intent to rely on defenses of insanity or diminished responsibility. *See* Iowa R.Crim.P. 10(11)(b). The seemingly senseless brutality of the slaying called into

question Huss' competence to stand trial.[1] Hearing on that issue was scheduled for November 24.

Meanwhile, the State deposed two experts listed as prospective witnesses in support of Huss' insanity defense. On the strength of the experts' testimony, the prosecutor and defense counsel engaged in negotiations regarding disposition of the case. Counsel agreed to submit the case to the district court upon stipulated evidence, confident that the court would enter a verdict of not guilty by reason of insanity.

What transpired at the hearing on November 24 is pivotal to our resolution of this case and must be recounted in some detail. First, the court received evidence from Dr. Shahe Zenian, a clinical psychologist. Based on this testimony, the court declared Huss competent to stand trial. Defense counsel then tendered a written waiver of jury trial and the court questioned Huss at length regarding his understanding of the waiver. Significantly, the court asked Huss whether he understood "that by waiving your right to a jury trial you are waiving your right to have those twelve people decide your case and leaving it up to just this court, one person?" The court concluded the colloquy by stating: "Then we will proceed with a bench trial before this court."

Counsel for the State then expressed the parties' desire to submit the case to the court on stipulated evidence, including the minutes of testimony, depositions of the State's witnesses and defense experts, and certain audio recordings of Huss taped at the crime scene and during a custodial interrogation. Defense counsel assented to this procedure on the record. The court then proceeded, at the State's request, to question Huss about his waiver of the confrontation and cross-examination rights implicated in a stipulated trial and, finally, whether Huss understood the potential ramifications of a finding of not guilty by reason of insanity "in the event the court were to make such a finding."

At this point, the record reveals that court and counsel adjourned to chambers for an off-the-record conference. When the record resumed, the prosecutor attempted to clarify the State's position as follows:

I wrote the minutes of testimony and I participated in all of the depositions in this case. Therefore, being completely familiar with the evidence in this matter, it is the State's understanding that given the record as it now stands ... that the court would essentially be placed in the position of having no evidence contrary to the fact that Loren Huss was in fact the individual who killed Marilyn Sheets and that would leave the court only with the determination as to whether or not at the time of the commission of that offense, based upon the attendant circumstances as witnessed by the police officers, the fire medic people, and based upon the evaluations of Mr. Huss by competent psychiatric and psychological witnesses, *the only question left for the court would be whether or not Mr. Huss was guilty of this offense or not guilty by reason of insanity* as those reasons are set out in both the criminal code of the State of Iowa and the Iowa Rules of Criminal Procedure.

And that further, in the event of such findings, the court's only options would be that *if the defendant were found guilty by reason of committing the murder without the excuse of insanity, the court's only option would be to sentence the defendant criminally to life in prison. Or in the alternative if the court were to find that the defendant was not guilty by reason of insanity, it is my understanding the court would have no option ... but to order the defendant committed* for ... whatever period of time it took for the court to then subsequently find that there had

---

1. Police called to the scene of the crime found the victim's body unclothed and covered with bruises and blood, one eye gouged out and her nose severed from her face. Huss was screaming and smearing blood on the walls of the apartment. In Huss' frenzied state, it took four to five officers to restrain him.

been a sufficient change in his condition that would allow his release.

(Emphasis added.)

For the record, defense counsel concurred in the procedure outlined by the State. After inquiry once again whether *Huss* knew what was going on, the court agreed to take the matter under advisement. Counsel then delivered impassioned closing arguments, marked by a common plea that the court find Huss not guilty by reason of insanity.

It appears safe to say that the court's ruling, filed in February 1987, hit the parties like a bombshell. Much to counsels' surprise, the district court found the evidence lacking in foundation to support Huss' defense of insanity. Moreover, based on the representations of counsel, the court concluded that it was "limited in its findings to the consideration of the defendant's sanity at the time of the offense." The earlier proceeding was characterized by the court as "a pretrial hearing only." It concluded by scheduling the case for jury trial, noting "the defendant may raise the issue of insanity at trial if he desires to do so."

This unexpected turn of events prompted a flurry of motions and the withdrawal and substitution of counsel in advance of Huss' subsequent jury trial. On appeal from the judgment entered upon the resulting jury verdict, we are concerned only with Huss' claim that he has been twice put in jeopardy for the murder of Marilyn Sheets, in violation of the Fifth Amendment to the United States Constitution.

II. The fifth amendment to the United States Constitution declares, in part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Because Huss alleges a violation of this constitutional safeguard, our appellate review is de novo. *See Lamphere v. State*, 348 N.W.2d 212, 215, 218 (Iowa 1984).

It is axiomatic that the constitutional prohibition against double jeopardy was "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). This time-honored principle reflects the notion

that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187–88, 78 S.Ct. at 223, 2 L.Ed.2d at 204.

Fundamental to the successful assertion of the right, however, is proof of former jeopardy. *See Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed. 2d 425, 433 (1973) ("the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial"). In a nonjury trial, jeopardy attaches when the court begins to hear evidence. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975); *State v. Buss*, 325 N.W.2d 384, 386 (Iowa 1982).

The question is whether the November 24 hearing was a trial. The State claims it was not, pointing to the trial court's ruling that characterized it as a "pre-trial hearing only" and to post-ruling affidavits of counsel which suggest that the purpose of the proceeding was "not to facilitate judicial review of the merits of the case, but to obtain judicial approval of an agreement for disposition." If, as the State contends, this was a plea proceeding, we agree that no jeopardy would attach absent unconditional acceptance of a plea, a requirement clearly missing here. *See Fransaw v. Lynaugh*, 810 F.2d 518, 523–29 (5th Cir.1987); *see also United States v. Soto*, 825 F.2d 616, 620 (1st Cir.1987).

The State can take little comfort in the label affixed by the trial court, for we are not bound by its characterization of the proceeding. *See United States v. Jorn*, 400 U.S. 470, 478, n. 7, 91 S.Ct. 547, 553–54,

n. 7, 27 L.Ed.2d 543, 552, n. 7 (1971). Moreover, we are unwilling to accept the State's characterization of the November 24 hearing as a plea proceeding. To do so would lead us to the unacceptable conclusion that the transcript before us has recorded mere lines in a mock trial script composed by counsel to facilitate a predetermined outcome.

As we made clear in *State v. Everett,* 372 N.W.2d 235 (Iowa 1985), a bench trial on stipulated evidence is not the same as a guilty plea proceeding, principally because no matter how overwhelming the evidence of guilt, the question of whether to convict or acquit remains with the trier of fact. *Id.* at 236–37. Applying that reasoning to the plain import of the record before us, we are convinced that on November 24, Loren Huss was "subjected to the hazards of trial and possible conviction" for the murder of Marilyn Sheets. *See Green,* 355 U.S. at 187, 78 S.Ct. at 223, 2 L.Ed.2d at 204. When the trial court was given the evidence to consider and took the case under advisement, jeopardy attached.

■ III. Given our view that the November 24 proceeding was a bench trial, the parties concede that the trial court's subsequent ruling amounted to a *sua sponte* declaration of mistrial. We concur in this characterization of the trial court's action and now turn to a determination of the impact of mistrial on Huss' double jeopardy claim.

We begin with the premise that "[t]he constitutional proscription of double jeopardy does not mean that every time an accused is placed on trial he must go free absent a final judgment." *State v. Gowins,* 211 N.W.2d 302, 304 (Iowa 1973). Decisions of the United States Supreme Court have permitted reprosecution after mistrial, notwithstanding the attachment of jeopardy, when done to serve the societal interest in achieving justice, *see Jorn,* 400 U.S. at 480–86, 91 S.Ct. at 554–58, 27 L.Ed. 2d at 554–57, or when done in the "sole interest of the defendant," *see Gori v.*

*United States,* 367 U.S. 364, 368–69, 81 S.Ct. 1523, 1526–27, 6 L.Ed.2d 901, 904–05 (1961). "If the law were otherwise, 'the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.'" *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949)).

The rationale underlying these exceptions rests on the broad discretion vested in trial courts to "conscientiously exercise their most sensitive judgment ... for the more effective protection of the criminal accused." *Gori,* 367 U.S. at 370, 81 S.Ct. at 1527, 6 L.Ed.2d at 905.

> Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection and he may be retried consistently with the Fifth Amendment.

*Id.* at 368, 81 S.Ct. at 1526, 6 L.Ed.2d at 904.

We are persuaded that the record before us reveals a situation in which the trial court's decision not to issue a verdict was prompted solely by a desire to protect the defendant's rights. The court was clearly aware of the parties' anticipated disposition of the case. It knew that counsels' agreement undoubtedly affected Huss' decision to submit the case upon stipulated evidence. With even the prosecutor arguing strenuously for an acquittal based on insanity, the court could reasonably assume that defense counsel had not truly contemplated the risk of a guilty verdict.

Thus, when the trial court realized that its assessment of the evidence of insanity did not match the previously unquestioned

conclusions of counsel, it chose the course deemed fairest to defendant: terminate the trial and reschedule the case before an impartial tribunal. Given the unusual circumstances we have outlined, we think the court was well within its sound discretion in doing so. The judgment entered on the verdict reached in Huss' subsequent jury trial is, therefore, affirmed.

AFFIRMED.