# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2219

_____

Loren Glen Huss, Jr.,                     *

               Appellant,       *

               v.            *   Appeal from the United States
                      *   District Court for the Southern

Leonard Graves, Warden,     *   District of Iowa.

             Appellee.       *

_____

Submitted: March 15, 2001

Filed: June 7, 2001

_____

Before RICHARD S. ARNOLD, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Loren Huss was charged with the first-degree murder of his girlfriend, his attorney and the state prosecutor assigned to his case both came to the view that he was insane at the time of the killing. The parties therefore agreed to a bench trial on a stipulated record, in the belief that the only reasonable outcome was a judgment of not guilty by reason of insanity. The record at the state bench trial consisted of depositions from a psychiatrist and a psychologist who opined that Mr. Huss was not responsible for his acts, in addition to tapes and depositions describing Mr. Huss's bizarre behavior.

At the conclusion of the proceeding, both the prosecutor and the defense counsel argued for a judgment of not guilty by reason of insanity.

Two months later, however, the state trial judge announced that he would not enter a judgment because he was unable to find Mr. Huss not guilty by reason of insanity due to concerns that he had about the evidence. The judge then set the case for a jury trial, holding that the proceedings to that point had been in the nature of a pretrial hearing only. At the jury trial that followed, to which Mr. Huss raised a double jeopardy objection, the prosecution aggressively sought a conviction and produced three expert witnesses who testified that Mr. Huss was sane; it also introduced photographs of the crime scene and evidence of Mr. Huss's previous convictions for crimes against women. The jury found Mr. Huss guilty, and he received a life sentence.

The Iowa Supreme Court upheld Mr. Huss's conviction on appeal. It rejected the trial court's characterization of the initial proceeding as a pretrial hearing and held instead that it was indeed a trial at which jeopardy had attached. *See State v. Huss*, 430 N.W.2d 621, 624 (Iowa 1988), *cert. denied*, 490 U.S. 1024 (1989). The court concluded, however, that double jeopardy principles did not preclude a retrial because the trial court's refusal to enter a judgment was akin to a mistrial that was granted in Mr. Huss's sole interest. *See id.* at 624-25.

Mr. Huss then petitioned for federal habeas relief, *see* 28 U.S.C. § 2254, again claiming double jeopardy as grounds for relief. The district court held that the Iowa Supreme Court's determination that the initial proceeding resulted in a mistrial granted for Mr. Huss's sole benefit precluded a finding of double jeopardy and thus refused to grant the writ. This appeal followed. We hold that the Iowa Supreme Court's holding was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), and we therefore grant the writ on the conditions described later in this opinion.

I.

Our power to grant habeas relief is limited. We may grant habeas relief to a state prisoner only if the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1). For a state court decision to be "contrary to" federal law, the decision must be "substantially different from the relevant precedent of [the Supreme] Court," *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The Iowa Supreme Court, *see Huss*, 430 N.W.2d at 624-25, relied on *Gori v. United States*, 367 U.S. 364, 365, 368-69 (1961), in concluding that the double jeopardy clause does not prevent the retrial of a defendant when an earlier mistrial was entered solely for his benefit. It is true that the Supreme Court in *Gori*, 367 U.S. at 369, stated that it was "unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." But we think that later Supreme Court decisions have significantly limited the holding in *Gori*.

In *United States v. Jorn*, 400 U.S. 470, 483 (1971), a plurality of the Supreme Court rejected the idea that a defendant could be subject to a second trial simply because it appeared that he or she benefited from an earlier mistrial. It noted that *post hoc* judgments on who benefits from a mistrial are "nothing more than an exercise in pure speculation," *id.*, and that to allow a retrial "based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision," *id.* In *Illinois v. Somerville*, 410 U.S. 458, 469 (1973), moreover, a case in which the Court quoted approvingly from *Jorn* and adopted its standards, the Court held that the lack of prejudice to a defendant from a mistrial is not, by itself, sufficient to "preclude the defendant's invocation of the double jeopardy bar," *id.* at 471. Although the question of who

benefits from a mistrial remains a matter of relevance under Supreme Court precedent, it is not by itself determinative, as the Iowa Supreme Court evidently believed.

By focusing on the "sole interest of the defendant" language in *Gori*, 364 U.S. at 369, the Iowa Supreme Court neglected to weigh other important considerations that are relevant to the question of whether a trial has proceeded in violation of the double jeopardy clause. A defendant may be retried following a mistrial granted without his consent only if there was a "manifest necessity," *United States v. Perez*, 22 U.S. 579, 580 (1824), for the mistrial; *see also Jorn*, 400 U.S. at 481 (plurality opinion). The concept of "manifest necessity" does not lend itself to rigid application, and requires a due regard for the facts and circumstances of each case. *See Arizona v. Washington*, 434 U.S. 497, 506 (1978). In particular, a determination of whether manifest necessity required a mistrial involves, among other things, an inquiry into whether there were alternatives to a mistrial, *see Jorn*, 400 U.S. at 487 (plurality opinion), and whether the trial court gave the defense counsel an opportunity to explain his or her position on a mistrial, *see Washington*, 434 U.S. at 515-16.

A final consideration in this kind of case is whether the granting of a mistrial denied the defendant the right to "retain primary control of the course to be followed" at trial. *See United States v. Dinitz*, 424 U.S. 600, 609 (1976). A defendant has an important interest in "conclud[ing] his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate," *Jorn*, 400 U.S. at 486 (plurality opinion). This question is separate from the question of who the court thinks would benefit from a mistrial, because it focuses on the defendant's right to choose whether to accept the purported benefit of a mistrial.

The Supreme Court has thus clearly indicated that courts are to look beyond the single question of who benefits from a mistrial when determining whether double jeopardy bars a retrial. Even if Mr. Huss benefited from the mistrial, a retrial is not

-4-

constitutional unless there was "some important countervailing interest of proper judicial administration," *Somerville*, 410 U.S. at 471, motivating the mistrial.

We believe that by relying on the "sole interest" language of *Gori*, 364 U.S. at 369, to the exclusion of other relevant considerations, the Iowa Supreme Court applied the incorrect legal standard to Mr. Huss's case. This does not mean that Mr. Huss is necessarily entitled to habeas relief: As we have said, we may grant relief only if the decision of the Iowa Supreme Court is "substantially different," *Williams*, 529 U.S. at 405, from what the decision would have been if that court had used the legal standard established by the Supreme Court. We must therefore apply that standard to the facts of this case to determine whether a double jeopardy violation has occurred.

## II.

To make such a determination, we must first decide whether Mr. Huss has twice been placed in jeopardy. The Iowa Supreme Court found that he had, *see Huss*, 430 N.W.2d at 624, and we concur in that assessment. Although both parties to the bench trial agreed that Mr. Huss should be found not guilty by reason of insanity, that agreement of course could not bind the trial court and the trial court thus retained full power to find Mr. Huss guilty of murder. Under these circumstances, it is clear that this initial proceeding was a trial to which jeopardy attached. The state appears to concede as much on appeal, and instead focuses its argument on the contention that twice placing Mr. Huss in jeopardy did not in this case violate the double jeopardy clause.

In evaluating that argument, we consider whether there was a "manifest necessity," *Perez*, 22 U.S. at 580, to grant a mistrial in Mr. Huss's case. The state judge granted the mistrial because he found himself unable to enter the judgment of not guilty by reason of insanity that both Mr. Huss and the prosecution had expected. In so doing, however, the judge failed to consider potential alternatives to a mistrial, an inquiry that is central to determining whether manifest necessity requires a mistrial. *See*

-5-

*Long v. Humphrey*, 184 F.3d 758, 761 (8th Cir. 1999). The most obvious alternative available to the judge was to enter a judgment of guilty: There was no error of law or unfair prejudice to Mr. Huss during the bench trial. The judge could also have simply asked the parties to supplement the record. Under Iowa law, moreover, a judge in a bench trial is allowed to reopen the evidence even after the entry of judgment. *See* Iowa R. Crim. P. 23(2)(c). If the judge believed that the evidence of Mr. Huss's insanity was insufficient, he could have entered a verdict of guilty and then granted a defense motion to reopen the evidence. Instead, before declaring a mistrial, the judge failed even to ask Mr. Huss's counsel for her opinion on whether Mr. Huss wanted a mistrial.

Contrary to the state's position, this case is not similar to those in which a mistrial is declared when a jury is unable to reach a verdict, a situation in which a finding of manifest necessity is almost always justified. *See Washington*, 434 U.S. at 509-10. The permissibility of a retrial following a hung jury is based largely on the difficulty of getting twelve independent decision makers to agree on one view of the evidence.

Mr. Huss's first trial, however, was conducted before a judge acting as the sole fact finder. The failure of a judge to reach a verdict is vastly different from a similar failure by a jury, since a judge need not agree with anyone on his or her view of the evidence. The difference here is even greater because, as noted before, the state judge could have requested further evidence if he was unsure of the proper verdict. We thus conclude that there was no manifest necessity for a retrial here.

By declaring a mistrial and setting Mr. Huss's case for a jury trial, we think that the state judge also denied Mr. Huss his right to retain primary control over the course of his trial. In particular, Mr. Huss was denied his right to receive a judgment from "a tribunal he might believe to be favorably disposed to his fate," *Jorn*, 400 U.S. at 486 (plurality opinion), when the judge refused to render a verdict. The state maintains,

however, that in the absence of a mistrial the state judge would have entered a judgment of guilty, and thus that Mr. Huss had no interest in seeing the bench trial through to its conclusion.

Even if the state is correct that Mr. Huss's conviction was inevitable, we reject the conclusion that it necessarily follows that Mr. Huss had no interest in continuing the bench trial. Under Iowa law, a criminal defendant need prove his insanity only by a preponderance of the evidence. *See* Iowa Code Ann. § 701.4. Nearly all of the evidence at the bench trial pointed to a conclusion that Mr. Huss was insane, and so it appears to us that Mr. Huss would have had more than a reasonable prospect of having a conviction reversed on the grounds of the sufficiency of the evidence. Of course, we do not know what course of action Mr. Huss would have chosen had the state judge requested his views on the issue of a mistrial, but we are unconvinced that he would certainly have chosen a new trial. We therefore believe that the judge denied Mr. Huss's right to retain primary control over the course of his trial when the judge granted a mistrial *sua sponte* without consulting him.

In granting a mistrial, moreover, the state judge undermined a major protection afforded by the double jeopardy clause. The prohibition of a retrial prevents the government from "gain[ing] an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own," *United States v. DiFrancesco*, 449 U.S. 117, 128 (1980). In this case, that aspect of double jeopardy appears to us to be particularly relevant. Mr. Huss presented his full case for his insanity at the bench trial without prosecution rebuttal. At the jury trial, Mr. Huss presented essentially the same case, but the prosecution produced a great deal of new evidence aimed specifically at countering Mr. Huss's case for insanity. As a result, Mr. Huss's conviction is now supported by ample evidence and is thus virtually unassailable on the grounds of sufficiency of the evidence. Under these circumstances, we think that the granting of a mistrial, rather than being in Mr. Huss's interest, may well have prejudiced him very considerably.

After applying the proper legal standard to this case, we believe that there was no manifest necessity for a mistrial in this case, and that the mistrial declaration stripped Mr. Huss of his right to maintain primary control over his trial and may well have compromised his effort to prove his insanity. We are therefore obligated to conclude that under "clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), Mr. Huss's retrial and subsequent conviction violated the double jeopardy clause. The Iowa Supreme Court's decision finding no constitutional violation is therefore "substantially different," *Williams*, 529 U.S. at 405, from relevant Supreme Court precedent, thus entitling Mr. Huss to some form of habeas relief.

III.

"[H]abeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995). Because of the equitable nature of the writ, a federal court "has broad discretion in conditioning a judgment granting habeas relief [and is] authorized ... to dispose of habeas corpus matters 'as law and justice require,' " *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987), quoting 28 U.S.C. § 2243. When a double jeopardy violation is found on habeas review, the normal relief is to release the prisoner and to forbid further retrial.

This case, however, is quite obviously far removed from the norm. Rather than maintaining his innocence, Mr. Huss sought at his bench trial to be excused from his acts because of insanity. Even if Mr. Huss had received what he asked for, therefore, he would have been deprived of his liberty, since a defendant in Iowa who is found not guilty by reason of insanity is subject to involuntary commitment in a mental facility. *See* Iowa R. Crim. P. 21(8). If we were to release Mr. Huss, he would be in a better position than he would have been in if the bench trial had concluded in his favor.

We do not believe that under the unique circumstances of this case the double jeopardy clause prohibits the retrial of Mr. Huss altogether. The Constitution does not

absolutely require "that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment," *Wade v. Hunter*, 336 U.S. 684, 688 (1949). A retrial is permissible when a defendant's interest in a single trial is "outweighed by the competing and equally legitimate demand for public justice," *United States v. Givens*, 88 F.3d 608, 611 (8th Cir. 1996).

As we noted earlier, Mr. Huss's second trial was prejudicial to him, as the prosecution offered new evidence specifically to counter the evidence that he had introduced at his first trial. We do not think, however, that every possible retrial of Mr. Huss would suffer from similar difficulties. Mr. Huss's first trial was conducted on a stipulated record, and the same evidence can be submitted to another judge. In such a proceeding, Mr. Huss's interest in a single trial would be greatly diminished, since the prosecution could not introduce new evidence. Although Mr. Huss would nevertheless in a sense be forced to stand trial twice, this type of proceeding certainly would not subject Mr. Huss to the same level of anxiety as a full-blown evidentiary hearing would. In fact, we think that all that the state of Iowa has to do is to bring Mr. Huss's original proceeding to a close.

For these reasons, we believe that it is appropriate to issue a writ of habeas corpus releasing Mr. Huss, unless the state of Iowa, within 90 days after the mandate issues in this case, retries Mr. Huss by submitting the stipulated record from the first trial to a new judge. If Mr. Huss is convicted, he would have his right to appeal the conviction under Iowa law and then to request post-conviction relief if necessary. If, on the other hand, Mr. Huss is found not guilty by reason of insanity, he would be sent to an appropriate institution for evaluation, and if he is not "dangerous to [him]self or to others" he would be released, *see* Iowa R. Crim. P. 21(8)(e). If the state chooses not to retry Mr. Huss, it would have to release him, subject, of course, to any subsequent commitment procedures that might be available.

IV.

For the foregoing reasons, we reverse the judgment of the district court, and remand for the entry of a judgment granting the writ of habeas corpus unless the state of Iowa retries Mr. Huss in a manner consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.