STATE of Iowa, Appellee,

v.

Loren Glen HUSS, Jr., Appellant.

No. 01–2048.

Supreme Court of Iowa.

Feb. 26, 2003.

Barbara A. Schwartz, University of Iowa Clinical Programs, and Teonta Williams

and Anthony Haughton, Student Legal Interns, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald and Thomas H. Miller, Assistant Attorneys General, for appellee.

LARSON, Justice.

This is another chapter in the long history of this case. The defendant, Loren Huss, was arrested and charged with murder in the gruesome death of his girlfriend, Marilyn Sheets, in 1986. He was ultimately convicted and appealed to this court. *State v. Huss,* 430 N.W.2d 621 (Iowa 1988), *cert. denied,* 490 U.S. 1024, 109 S.Ct. 1755, 104 L.Ed.2d 191 (1989) (*Huss I*). We affirmed his conviction. Huss took his case to federal district court in a habeas corpus action, lost there, and appealed to the eighth circuit. *See Huss v. Graves,* 252 F.3d 952 (8th Cir.2001). The eighth circuit reversed and remanded the case for entry of a habeas corpus order by the federal district court unless the State, within ninety days, retried Huss by submitting the stipulated record to a new judge. Huss was tried in a nonjury trial in Polk County and found not guilty by reason of insanity. Huss filed this appeal, claiming the trial violated the double jeopardy provisions of the United States and Iowa Constitutions. We affirm.

## I. *Facts and Prior Proceedings.*

On May 19, 1986, police broke into the apartment that Huss shared with the victim. They discovered Sheets' mutilated body on the floor. Huss was spreading blood over the walls. With blood in his mouth and caked on his face, Huss was screaming passages of scripture. Later, while confined in a padded cell, Huss banged his head against the bed frame until he bled profusely, then smeared the cell walls with blood.

The State charged Huss with first-degree murder, and Huss filed a notice of insanity. After extensive discovery, the prosecutor became convinced that Huss was insane at the time of the killing. The State and defense counsel agreed the appropriate disposition would be to present the evidence in a bench trial on a stipulated record. In closing arguments both sides argued that Huss was insane at the time of the killing. The court took the matter under advisement. Two months after the hearing the court ruled that it would not render a verdict and could not find the defendant was insane at the time of the murder. The court set the case for trial to a jury, characterizing the aborted submission on the stipulated record as a "pretrial hearing."

In the jury trial that followed the prosecutor abandoned the insanity approach and aggressively pursued a guilty verdict. The jury found Huss guilty of first-degree murder. Huss appealed to this court on the ground the jury trial violated his double-jeopardy rights. We found the original proceeding on the stipulated record was indeed a trial, not a "pretrial hearing," as the judge had characterized it, and that jeopardy had attached. However, we ruled that the trial court's refusal to enter a verdict in the original proceeding and to set the case for trial to a jury was in effect a mistrial declared in the sole interest of the defendant. *State v. Huss,* 430 N.W.2d at 624. We reasoned that, after the trial court determined that its assessment of the evidence did not match the arguments of the prosecutor and defense counsel, the court was reasonable in assuming the defendant had not contemplated the risk of a guilty verdict. *Id.* We found that the subsequent jury trial did not violate double jeopardy and affirmed the conviction.

Huss sought habeas corpus relief in the United States District Court for the South-

ern District of Iowa. That court denied relief, and Huss appealed to the eighth circuit, which granted the writ. It held Huss had been subjected to double jeopardy but that his release under the writ would be conditional. He would be released unless, within ninety days, the State retried him by submitting the original stipulated record to a new judge. *Huss,* 252 F.3d at 958–59. Huss petitioned for certiorari in the United States Supreme Court, but certiorari was denied. *Huss,* 535 U.S. 933, 122 S.Ct. 1308, 152 L.Ed.2d 218 (2002).

The State resumed proceedings in district court as allowed by the eighth circuit, based on the original stipulated record, and Huss filed a motion to dismiss on double-jeopardy grounds. The court denied the motion to dismiss, ruling that the eighth circuit's decision was the law of the case. It did not address Huss's double-jeopardy arguments. Huss unsuccessfully applied for interlocutory appeal to this court. The district court, on the stipulated record, found Huss not guilty by reason of insanity and ordered his evaluation for criminal commitment. The resulting commitment order is the subject of a separate appeal, and it is not at issue here.

Huss now appeals the court's verdict of not guilty by reason of insanity, raising two issues: (1) whether the federal court's habeas corpus ruling is binding as the law of the case, as the district court concluded; and (2) whether Huss's retrial following the federal court's grant of habeas corpus relief subjected him to double jeopardy so as to prevent a retrial.

## II.   *The Constitutional Provisions.*

The Fifth Amendment to the United States Constitution states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This provision is applied to the states through the Due Process Clause of the Fourteenth Amendment. *Justices of Boston Mun. Ct. v. Lydon,* 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311, 323 (1984). The Iowa Constitution provides that "No person shall after acquittal, be tried for the same offence...." Iowa Const. art. I, § 12. *See generally State v. Franzen,* 495 N.W.2d 714 (Iowa 1993).

## III.   *The Habeas Corpus Ruling.*

■ The eighth circuit disagreed with our opinion in *Huss I* and held that the trial in which Huss was convicted of first-degree murder violated double jeopardy principles because the earlier "mistrial" was not based on "manifest necessity" as required by federal cases. *Huss,* 252 F.3d at 955 (citing *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824), and *United States v. Jorn,* 400 U.S. 470, 481, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 554 (1971)). The eighth circuit ruled that our court in *Huss I* erred by focusing on the benefit to Huss in granting a mistrial sua sponte. *Huss,* 252 F.3d at 956. The court held, however, that a proceeding that places a defendant in double jeopardy does not necessarily prevent a retrial, *id.* at 958. This is consistent with general constitutional principles:

> [I]n cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached *begins, rather than ends, the inquiry whether the Double Jeopardy Clause bars retrial.*

*Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973) (emphasis added). The eighth circuit said in *Huss:*

> "[H]abeas corpus is, at its core, an equitable remedy," *Schlup v. Delo,* 513 U.S. 298, 319, 115 S.Ct. 851, 863, 130 L.Ed.2d 808, 831 (1995). Because of the equitable nature of the writ, a federal

court "has broad discretion in conditioning a judgment granting habeas relief [and is] authorized ... to dispose of habeas corpus matters 'as law and justice require,' " *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724, 732 (1987). When a double jeopardy violation is found on habeas review, the normal relief is to release the prisoner and forbid further retrial.

This case, however, is quite obviously far removed from the norm. Rather than maintaining his innocence, Mr. Huss sought at his bench trial to be excused from his acts because of insanity. Even if Mr. Huss had received what he asked for, therefore, he would have been deprived of his liberty, since a defendant in Iowa who is found not guilty by reason of insanity is subject to involuntary commitment in a mental facility. If we were to release Mr. Huss, he would be in a better position than he would have been in if the bench trial had concluded in his favor.

We do not believe that under the unique circumstances of this case the double jeopardy clause prohibits the retrial of Mr. Huss altogether. The Constitution does not absolutely require "that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment," *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). A retrial is permissible when a defendant's interest in a single trial is "outweighed by the competing and equally legitimate demand for public justice," *United States v. Givens,* 88 F.3d 608, 611 (8th Cir.1996).... Mr. Huss's first trial was conducted on a stipulated record, and the same evidence can be submitted to another judge.

*Huss,* 252 F.3d at 958. The court then ordered this disposition:

[I]t is appropriate to issue a writ of habeas corpus releasing Mr. Huss, unless the State of Iowa, within 90 days after the mandate issues in this case, retries Mr. Huss by submitting the stipulated record from the first trial to the new judge.

*Id.*

### IV. *The Trial Following Federal Remand.*

The State argues, and the district court ruled, that the holding of the federal case binds this court because it is the law of the case. Huss responds that law-of-the-case principles do not apply because a holding in a habeas corpus case between Huss and a *warden* cannot bind the court in a subsequent case in which Huss and the *state* are the parties. Huss suggests we could reach a conclusion as to the application of the federal constitutional provision different from that of the federal court in *Huss v. Graves.* In any event, Huss argues we should interpret Iowa's double-jeopardy provision to prevent his retrial. We have no inclination to question the federal court's interpretation of the federal double-jeopardy provision, and we interpret Iowa's double-jeopardy provision to allow Huss's retrial for the reasons that follow. *See Franzen,* 495 N.W.2d at 715–16 ("same constitutional standards for determining when jeopardy attaches must be applied equally in both federal and state courts").

█ We believe a retrial as ordered by the eighth circuit is permissible under well-established principles, as we will discuss, without regard to any preclusive effect of the eighth circuit's opinion in *Huss.* We therefore do not address Huss's first issue, involving the application of the law of the case. The second issue, as stated by Huss, is

whether the subsequent re-trial of Loren Huss following the grant of habeas

relief on double jeopardy grounds was permissible, ... [in view of] published decisions of the United States Supreme Court, namely *Burks v. United States,* 437 U.S. 1[, 98 S.Ct. 2141, 57 L.Ed.2d 1] (1978), *Swisher v. Brady,* 438 U.S. 204[, 98 S.Ct. 2699, 57 L.Ed.2d 705] (1978), and *Smalis v. Pennsylvania,* 476 U.S. 140[, 106 S.Ct. 1745, 90 L.Ed.2d 116] (1986).

In *Burks* the Supreme Court held a conviction for armed robbery barred a subsequent trial because the government had failed to rebut the defendant's evidence of insanity. The Court distinguished the cases that are resolved on a failure of proof from those based on procedural error. It noted:

> "The principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an *error in the proceedings* leading to conviction is a well-established part of our constitutional jurisprudence."

*Burks,* 437 U.S. at 14, 98 S.Ct. at 2149, 57 L.Ed.2d at 11–12 (quoting *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448, 450 (1964)).

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect.... When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.

*Burks,* 437 U.S. at 15–16, 98 S.Ct. at 2149–50, 57 L.Ed.2d at 12.

In discussing the distinction between cases terminated for lack of evidence and those terminated for "error in the proceedings," the Court in *Burks* said:

> Given the requirements for entry of a judgment of acquittal, the purpose of the [Double Jeopardy] Clause would be negated were we to afford the government an opportunity for the proverbial "second bite at the apple."

437 U.S. at 17, 98 S.Ct. at 2150, 57 L.Ed.2d at 13.

■ In Huss's second cited case, *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), nine minors challenged a Maryland procedure that allowed the findings of a master's report in delinquency cases to be appealed for judicial review. The Supreme Court said:

> Importantly, a [juvenile rule allowing a master's report to be reviewed by a judge] proceeding does not impinge on the purposes of the Double Jeopardy Clause. A central purpose "of the prohibition against successive trials" is to bar "the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding." [The rule in question] does not provide the prosecution that forbidden "second crack." The State presents its evidence once before the master. The record is then closed, and additional evidence can be received by the Juvenile Court judge only with the consent of the minor.

*Swisher,* 438 U.S. at 215–16, 98 S.Ct. at 2706, 57 L.Ed.2d at 715 (quoting *Burks,* 437 U.S. at 11, 98 S.Ct. at 2147, 57 L.Ed.2d at 9). *Swisher* does not support the proposition for which Huss cites it. *Swisher* merely reinforces the general rule that terminations on grounds other than insufficiency of the evidence will not foreclose a retrial.

In Huss's third cited case, *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), the Court held that a trial judge's ruling, on the defendant's demurrer, that the prosecution's evidence was insufficient to establish guilt, was an acquittal under the Double Jeopardy Clause and barred further proceedings. *Smalis,* 476 U.S. at 146, 106 S.Ct. at 1749, 90 L.Ed.2d at 122. This merely confirms the holding of *Burks*—retrials will not be allowed if the earlier proceeding is terminated for insufficient evidence. 437 U.S. at 18, 98 S.Ct. at 2150–51, 57 L.Ed.2d at 14.

In contrast to the cases cited by Huss, the present case is not one that was terminated to give the State a "second bite at the apple" following a failure of proof in the initial proceeding. In fact, the eighth circuit made it clear that the State could *not* mend its hold by furnishing additional proof. It said:

> A retrial is permissible when a defendant's interest in a single trial is "outweighed by the competing and equally legitimate demand for public justice."
>
> . . . .
>
> Mr. Huss' first trial was conducted on a stipulated record, and the same evidence can be submitted to another judge. In such a proceeding, Mr. Huss' interest in a single trial would be greatly diminished, *since the prosecution could not introduce new evidence.*

*Huss,* 252 F.3d at 958 (emphasis added) (quoting *Givens,* 88 F.3d at 611).

In a case analogous to the present one, the Supreme Court approved the retrial of a defendant whose trial had been terminated by the court because of misconduct of defense counsel. On retrial the jury convicted the defendant, but the conviction was set aside by the fifth circuit on double-jeopardy grounds. The Court said:

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor" threatens the "(h)arassment of an accused by successive prosecutions or declarations of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant.
>
> But here the trial judge's banishment of [defense counsel] from the proceedings was not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal. As the Court of Appeals noted, [defense counsel] "was guilty of improper conduct" during his opening statement which "may have justified disciplinary action[.]" Even accepting the appellate court's conclusion that the trial judge overreacted in expelling [defense counsel] from the courtroom, the court did not suggest, the respondent has not contended, and the record does not show that the judge's action was motivated by bad faith or undertaken to harass or prejudice the respondent.

*United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 276 (1976) (citations omitted) (footnote omitted) (quoting *Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556; *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102–03

(1963)). The Court in *Dinitz* reversed the court of appeals and remanded for retrial. *Id.* at 611–12, 96 S.Ct. at 1082, 47 L.Ed.2d at 276. *Dinitz* reinforced the distinction between errors in the proceedings and terminations on the merits of the cases.

In *Somerville* the jury had been impaneled and sworn, so jeopardy had attached, but no evidence had been presented. The trial court discovered the indictment was defective because it did not allege the requisite intent. Under Illinois law, the defect could not be cured except through a new indictment. In fact, if the trial had been completed, the defendant could have challenged a conviction at any time, even on appeal, because the error was jurisdictional. *Somerville,* 410 U.S. at 459–60, 93 S.Ct. at 1068, 35 L.Ed.2d at 428. A grand jury indicted the defendant again. The defendant was tried and convicted, and the Illinois Supreme Court affirmed. Defendant petitioned for habeas corpus in federal court, and the seventh circuit ruled that under double-jeopardy principles the defendant could not be retried. The Supreme Court reversed, holding that the fact the defendant had been previously held in jeopardy did not prevent a retrial.

> The trial judge was faced with a situation similar to those in [other cases], in which a procedural defect might or would preclude the public from either obtaining an impartial verdict or keeping a verdict of conviction if its evidence persuaded the jury. If a mistrial were constitutionally unavailable in situations such as this, the State's policy could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned. Here, the trial judge's action was a rational determination designed to implement a legitimate state policy, with no suggestion that the implementation of that policy in this manner could be manipulated so as to prejudice the defendant. This situation is thus unlike *Downum [v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)], where the mistrial entailed not only a delay for the defendant, but also operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case. Here, the delay was minimal, and the mistrial was, under Illinois law, the only way in which a defect in the indictment could be corrected. Given the established standard of discretion set forth in [Supreme Court cases], we cannot say that the declaration of a mistrial was not required by "manifest necessity" and the "ends of public justice."

*Id.* at 468–69, 93 S.Ct. at 1072–73, 35 L.Ed.2d at 433–34.

Huss's original "trial" on a stipulated record created a similar dilemma for the district court here. It could have entered a verdict of guilty, contrary to the evidence and the arguments presented by both sides. Or, it could have entered a verdict of not guilty, in the face of evidence presented by both sides that Huss had in fact killed the victim, and in violation of the rights of society whose "interest in fair trials [is] designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978; *accord Somerville,* 410 U.S. at 470, 93 S.Ct. at 1073, 35 L.Ed.2d at 434. The court elected to do neither. It refused to rule either way, effectively resulting in a mistrial. This disposition, having been made without a showing of manifest necessity, was an error in the proceedings and not based on the sufficiency of the evidence. Based on the reasoning of the cases previously discussed, we hold this does not bar a retrial.

■ Our adoption of the test for determining whether a case may be retried, i.e., whether termination of the trial was for

"procedural errors," requires us to examine an earlier case, *State v. Dixon*, 534 N.W.2d 435 (Iowa 1995). In *Dixon* the trial judge had inserted himself into the questioning of a witness, and when challenged by one of the attorneys, sua sponte, declared a mistrial. We said:

> If a trial judge acts irrationally or irresponsibly in declaring a mistrial, the judge has abused his or her discretion and *double jeopardy will bar retrial of the matter.*

*Dixon*, 534 N.W.2d at 441 (emphasis added). We cited *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 734 (1978), for that proposition. In *Dixon* we held the trial judge had "acted irrationally or irresponsibly in sua sponte declaring a mistrial," and barred retrial. 534 N.W.2d at 441. However, *Arizona v. Washington* did not hold that an irrational or irresponsible act by the judge would automatically bar retrial, as we suggested in *Dixon*. Rather, the Court said:

> If a trial judge acts irrationally or irresponsibly, his action *cannot be condoned.*

*Arizona v. Washington*, 434 U.S. at 514, 98 S.Ct. at 835, 54 L.Ed.2d at 734 (citations omitted) (emphasis added). The Court did not bar retrial.

■ We retreat from the broad language of *Dixon* that suggests an "irrational or irresponsible" act of a judge will automatically bar a retrial. "Irrational or irresponsible" acts of a judge, in the circumstances of a given case, may fairly be characterized as mere "errors in the proceedings," which will not bar a retrial.

### VI. *Conclusion.*

We conclude that the State was not precluded from trying Huss again. Huss does not contend that the termination of the original trial was motivated to give the State "another bite at the apple," *Burks*, 437 U.S. at 17, 98 S.Ct. at 2150, 57 L.Ed.2d at 13, or a "forbidden 'second crack'" for the prosecution, *Swisher*, 438 U.S. at 215–16, 98 S.Ct. at 2706, 57 L.Ed.2d at 715. The termination of the proceeding did not amount to an acquittal or other ruling on the sufficiency of the evidence, *Swisher*, 438 U.S. at 215–16, 98 S.Ct. at 2706–07, 57 L.Ed.2d at 715; *Burks*, 437 U.S. at 15–16, 98 S.Ct. at 2149–50, 57 L.Ed.2d at 12, or any "'bad-faith conduct by judge or prosecutor' [to] '[h]arass[]' ... an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276 (quoting *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556, and *Downum*, 372 U.S. at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 102–03). *See generally State v. Swartz*, 541 N.W.2d 533, 537–41 (Iowa Ct.App.1995) (discussing principles regarding retrial). The termination of Huss's first trial without a finding of "manifest necessity" by the trial court was an error in the proceeding and did not foreclose the State under either federal or state double-jeopardy principles from retrying Huss.

**AFFIRMED.**