# IN THE COURT OF APPEALS OF IOWA

No. 13-0837
Filed August 27, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EVERETT MARCUS WEBB,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows (trial), Mark R. Lawson (motion to dismiss), and Mark D. Cleve (sentencing), Judges.

Everett Marcus Webb Jr. appeals from his conviction for conspiracy to commit a non-forcible felony.  **AFFIRMED.**

Courtney T. Wilson of Gomez May, L.L.P., Davenport, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Stephanie Koltookian, Student Legal Intern, Michael J. Walton, County Attorney, and Amy Devine, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., Tabor, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**GOODHUE, S.J.**

Everett Marcus Webb Jr. appeals from his conviction for conspiracy to commit a non-forcible felony.

## I.      Background Facts and Proceedings

A jury trial commenced on September 24, 2012, based on an amended trial information charging Everett Marcus Webb Jr. with conspiracy to commit a non-forcible felony, enhanced by a charge that Webb was an habitual offender. The State alleged that Webb was a felon and that he had conspired with Natasha Clawson and Carlissa Stamps to purchase a gun, which he was forbidden to purchase or possess as a felon.  Before the trial began, Webb stipulated he had been convicted of a felony.  Further, the evidence indicated Webb, Stamps, and Clawson went to a store in Bettendorf for the purpose of purchasing a gun. Clawson actually made the purchase from the gun store but could not take immediate possession of it because she did not possess the necessary gun permit.  A surveillance camera at the store indicated that Webb counted out an amount of money and gave it to Stamps, who in turn gave it to Clawson. Clawson then gave the money to the store clerk, who then put the gun on layaway.  Clawson obtained the necessary permit, and four days later picked up the gun and put it in her car.  She testified that she drove Webb and Stamps to a point near a KFC in Davenport and Webb took the gun and placed it in a location behind the KFC building.  Webb did not testify, and Stamps was unavailable and did not testify.  The gun was never found.

This case was fully submitted, and the jury retired to deliberate.  The jury advised the court attendant it had reached a verdict.  Before the jury returned the

verdict, the court attendant advised the court that one of the jurors said she had been in contact with Webb in the elevator. The court advised counsel that if the State was not inclined to move for a mistrial it would be unnecessary to question the juror. The State indicated that it would be moving for a mistrial. The juror was called into open court and was asked if she had contact with Webb after deliberations had begun, and she stated "yes." She then was asked the nature of the contact. She responded,

> I was in the elevator and I was going to say hello or hi, or something with the defendant, and I said "I can't speak to you," and he made a comment. "I didn't give her the money."—Excuse me—"I just gave her the money" is what he said.

The court asked if that was the extent of the conversation, and the juror responded, "That was the extent." The court then asked if the information was shared with the other jurors prior to deciding on the verdict, and she initially said "yes and no," but she ultimately answered "no." The State reaffirmed its motion for mistrial, Webb offered neither support nor objection to the State's motion, and it was granted. Subsequently, Webb made a motion for dismissal on the grounds that another trial would constitute double jeopardy in violation of the Fifth Amendment of the United States Constitution. The motion was denied.

A second trial was held, and Webb was convicted as charged. Stamps was a significant witness at the second trial. Webb has appealed, contending that he has been subjected to double jeopardy and that his motion to dismiss should have been granted.

## II.     Scope of Review

A trial court's ruling on a motion to dismiss a criminal charge on the grounds of double jeopardy is for errors of law.  Iowa R. App. P. 6.907; *State v. Dixon,*. 534 N.W.2d 435, 438 (Iowa 1995).

## III.     Error Preservation

Webb preserved error by moving for a directed verdict and filing posttrial motions in arrest of judgment and for a new trial all predicated on the claim of double jeopardy, which the court had denied.  Error has been preserved when an issue has been raised and ruled on by the trial court.  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

## IV.     Discussion

The issue of double jeopardy as raised in this case relates back to why the first trial was declared a mistrial.  The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or of limb."  U.S. Const. amend V.  Under the Fifth Amendment, jeopardy attaches before judgment becomes final and includes the right of an accused to have his or her trial completed before a particular tribunal. *Arizona v. Washington*, 434 U.S. 497, 503 (1978).  Nevertheless, a mistrial does not always bar a new trial under the double jeopardy rule.  *State v. Huss*, 657 N.W.2d 447, 449 (Iowa 2003).  "[W]hether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether 'there is a manifest necessity for the (mistrial) or the ends of public justice would otherwise be

defeated.'" *United States v. Dinitz*, 424 U.S. 600, 606-07 (1976) (citing *Illinois v. Somerville*, 410 U.S. 458, 461 (1973)) (other citations omitted).

Webb did not object to the State's motion for a mistrial. Neither the parties nor the court interrogated the juror as to whether Webb's comment in the elevator impacted her decision as to the proper verdict to be returned. Nevertheless, Webb's only testimony to any member of the jury was his out-of-court statement directed to the critical issue of why he had provided the funds to a third party, which were used to purchase the gun.

A party's out–of-court comment to a juror during deliberation under other circumstances might be inconsequential or innocently made and a specific showing of prejudice would need to be made before a mistrial should be granted. However, Webb's comment went to the center of the controversy and was inherently prejudicial. The jury had already agreed on a verdict. It is difficult to conceive of a corrective action short of mistrial.

Even though Stamps had not testified at the first trial, she—as well as Clawson—became a key witness at the second trial. For a mistrial to be granted in order that the State can marshal its evidence and address a weakness in its case does not constitute a "manifest necessity" voiding the double jeopardy prohibition. *Washington*, 434 U.S. at 507-08. The State's case may have been coincidentally strengthened at the second trial because of Stamps's testimony, but the State made no motion for a mistrial until it learned of Webb's contact with the juror. We are in the end faced with deciding whether Webb's right to have the accusation made against him tried only once before a particular tribunal, outweighs the public interest of protecting the sanctity of the jury from out-of-

court communications during deliberation. We believe and hold the public interest in the sanctity of the jury is such that double jeopardy cannot be used to shield an accused from a second trial when the first trial was aborted and a mistrial granted because of the accused's own deliberate act has tarnished the jury.

We conclude that the trial court correctly determined that in order to meet the ends of public justice, there was a manifest necessity to declare a mistrial, and that therefore the motion to dismiss was appropriately denied.

**AFFIRMED.**