UNITED STATES of America, Appellee,

v.

Rodney ALLEN, Appellant.

No. 92–2981.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1992.

Decided Jan. 28, 1993.

**941**

Frank Steinbach III, Des Moines, IA, argued, for appellant.

Clifford D. Wendel, Des Moines, IA, argued (Gene W. Shepard, Ronald M. Kayser and Clifford D. Wendel, on brief), for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

Rodney Allen appeals from an order of the United States District Court for the Southern District of Iowa denying his motion to dismiss a pending indictment after the district court had sua sponte declared a mistrial. Allen argues that the district court abused its discretion in finding that manifest necessity justified declaration of a mistrial. We agree, and therefore reverse.

On May 15, 1992, a federal grand jury indicted Wesley McQuay, Carlos Martez Downs, and Rodney Allen, charging all three with conspiracy to distribute cocaine base under 21 U.S.C. § 846 (1988), and use or carrying of a firearm during the commission of the drug offense under 18 U.S.C. § 924(c)(1) (Supp. III 1991). McQuay was also charged with two additional offenses.

A jury trial of all the defendants began on July 6, 1992. During the cross-examination of a government witness on July 7, certain of the witness's answers indicated that the government had failed to produce to the defendants materials that it was required to produce under Fed.R.Crim.P. 16. An examination of that witness was then held out of the presence of the jury. During this examination, all three defendants urged the court to declare, on its own motion, a mistrial *with prejudice*. Other witnesses were also examined out of the presence of the jury. At the conclusion of their testimony, the district court refused to declare a mistrial on its own motion *with prejudice*. Subsequently that same day, McQuay and Downs moved for a mistrial. Allen declined to join in the motion, requesting that his trial proceed. Later that day, after an *in camera* examination of forty-two pages of written material containing exculpatory matter relating to McQuay and Downs, which the government had previously failed to produce, the district court declared a mistrial as to all three defendants. The district court then rescheduled the case for trial. On July 30, 1992, Allen filed a motion to dismiss based on double jeopardy.

This court has jurisdiction under 28 U.S.C. § 1291 (1988) to hear Allen's appeal from the denial of his motion to dismiss on double jeopardy grounds, which we subject to de novo review. *See United States v. Dixon*, 913 F.2d 1305, 1308–09 (8th Cir. 1990).

The Fifth Amendment to the United States Constitution establishes that no person shall twice be put in jeopardy for the same offense. U.S. Const.Amend. V. The double jeopardy clause generally does not preclude reprosecution when a defendant requests or consents to a mistrial. *United States v. Martin*, 561 F.2d 135, 138 (8th Cir.1977). When a mistrial has been declared without a defendant's consent, however, double jeopardy precludes a retrial unless there exists manifest necessity to declare the mistrial. *United States v. Jorn*, 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971). In the present case, Allen did not consent to or request a mistrial. We therefore must test the propriety

of the court's decision by the manifest necessity standard.

■ A "high degree" of necessity, based upon the particular facts and circumstances involved, must be present before a court may conclude that a mistrial is appropriate. *Dixon*, 913 F.2d at 1311. In this case, the district court stated that it sua sponte declared a mistrial as to Allen because of judicial economy and the problems inherent in having a separate trial for Allen on the firearm charge. United States v. McQuay, Allen, and Downs, Crim. No. 92–49, slip op. at 5 (S.D.Iowa Aug. 26, 1992). Because considerations of judicial economy cannot support a finding of manifest necessity,[1] we must determine whether the record supports the district court's second reason, or one that may be implied, as a basis for a finding of manifest necessity.[2] *Dixon*, 913 F.2d at 1311, 1315.

■ In finding manifest necessity based on the firearm charge, the district court reasoned as follows:

It is, of course, not absolutely legally necessary to try defendants McQuay and Allen simultaneously.... But as a practical matter, it is highly desirable, and in the best interests of defendant Allen, for him to be jointly tried with defendant McQuay, if at all possible. If the first trial had gone on against Allen, it would have been far easier for the government to convince the jury that McQuay committed the drug conspiracy crime charged in Count 1 and committed the gun crime charged in Count 2 than it would have been if McQuay and Allen were tried together. McQuay and his attorney would not have been in the courtroom defending against those charges.... Additionally, if the trial had gone ahead as to Allen and he had

been found guilty on Count 2, he could assert in a post-conviction motion an arguable claim that he was denied the assistance of effective counsel because his lawyer had not joined in the motion for mistrial....

United States v. McQuay, Allen, and Downs, Crim. No. 92–49, slip op. at 7–8 (S.D.Iowa Aug. 26, 1992). A reading of the above language makes it clear that the district court based its determination of manifest necessity on "practicality," and a "belief" that a combined trial would benefit Allen. Practical considerations and speculation, however, cannot serve as a basis for manifest necessity. Moreover, when the mistrial was declared, neither the district court nor the government knew whether McQuay and Downs would go to trial or would do as they have done and enter guilty pleas.[3] In the event they chose the latter course, the prejudice to Allen is apparent. Under these circumstances, we believe that the benefits to Allen protected by the district court were entirely too speculative to constitute manifest necessity.

■ As a reviewing court, we respect the setting in which the trial court found itself at the time the mistrial was declared. *United States v. Cameron*, 953 F.2d 240, 244 (6th Cir.1992). In terms of trial proceedings, the following situation existed at the time the decision to declare a mistrial was made: a government witness could not be located and was not present for trial; only one witness had testified about Allen and his proximity to any drug activity; no evidence had been presented, nor did the government suggest, that Allen or Downs personally used or carried a firearm during the course of a drug conspiracy; and the government's key witness could not even place the three defendants together. We

---

1. "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's valued right to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (footnote omitted).

2. "[E]ven when the judge explains his or her reasons for declaring a mistrial, the record must support the explicit or implicit finding of 'mani-

fest necessity.' This is especially true when the judge makes a sua sponte ruling over the defendant's objection." *United States v. Sanders,* 591 F.2d 1293, 1299 (9th Cir.1979).

3. Downs's plea agreement specifically provides that he will testify as a witness against Allen. McQuay's plea agreement contains a general substantial assistance agreement.

are aware that under *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator. Thus, in the present case, if McQuay was found to have used or carried a firearm, in order to find Allen guilty of the firearms charge, the government would have to show that McQuay's act was done in furtherance of or in the scope of the drug conspiracy and was a natural and foreseeable consequence of the conspiracy.[4] *Id.* Aware of this, Allen requested that his trial continue and that the government prove its case against him. Due to the fact that it was uncertain whether Allen would benefit from the mistrial,[5] and that no reversible error had occurred relating to him at the time of the mistrial, permitting retrial would defeat the purposes of the double jeopardy clause.[6] *See Bates,* 917 F.2d at 395.

Because the record in this case does not reveal the manifest necessity for a retrial, we find that the district court's sua sponte declaration of a mistrial as to Allen was not the result of a *scrupulous* exercise of judicial discretion. Accordingly, we conclude that there was no manifest necessity for the mistrial and hold that the double jeopardy clause of the Fifth Amendment bars reprosecution of Allen. We reverse the order of the district court and remand the case with directions to dismiss the indictment and discharge Allen.

---

**4.** Of course, the government would first have to prove the existence of a drug conspiracy.

**5.** When discussing the role of reviewing courts in testing whether a trial court exercised its discretion properly in declaring a mistrial, the Ninth Circuit stated:

> The Supreme Court and appellate courts have relied on four indicators in determining whether the trial court abused its discretion. Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the alternative least harmful to a

defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial?

*United States v. Bates,* 917 F.2d 388, 395–96 (9th Cir.1990).

**6.** In *Dixon,* we stated that "in the declaration of a mistrial ... the district court could not have given adequate consideration to defendants' important interest in 'being able, once and for all, to conclude [their] confrontation with society through the verdict of a tribunal [they] might believe to be favorably disposed to [their] fate.'" *Dixon,* 913 F.2d at 1314 (citation omitted).