_____

Nos. 95-3760/3761/3762
_____

United States of America,       *
                                *
          Appellee,             *  Appeals from the United States
                                *  District Court for the
     v.                         *  Eastern District of Missouri.
                                *
Kenneth Givens, Robert Turner,  *
and Guinn Kelly,                *
                                *
          Appellants,           *
                  _____

          Submitted: March 14, 1996

          Filed: July 5, 1996
                  _____

Before MAGILL, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.
                  _____

MORRIS SHEPPARD ARNOLD, Circuit Judge.


     Appellants contend that the district court improperly declared a
mistrial and subjected them to double jeopardy by retrying them.  The
district court believed that manifest necessity required a mistrial in the
defendants' first trial and therefore rejected appellants' claims of double
jeopardy.  We reverse the judgment of the district court as to two
defendants, affirm as to the other, and remand.


                                I.

     Kenneth Givens, Robert Turner, and Guinn Kelly were members of the
Saint Louis Police Department who also worked as security guards at a
federal housing project.  They were accused of falsifying their time cards
to inflate the number of hours that it

appeared that they worked at that project.  At trial, Captain Harry Hagger, the defendants' supervisor at the police department, was called as a government witness.  Capt. Hagger testified about the policies of the police department regarding their officers' employment in part-time jobs, such as working as security guards.  He was one of the prosecution's first witnesses and it appears that the defendants were interested in discrediting his testimony.

During Capt. Hagger's cross-examination by Mr. Givens's attorney, C. John Pleban, Mr. Pleban approached the bench and described for the court a conversation that he had had with Capt. Hagger during which no one else was present.  Mr. Pleban said that Capt. Hagger had told him previously that Capt. Hagger suggested to Mr. Givens that Mr. Givens resolve the problem of overstated hours on his time cards by putting in extra hours.  Under Mr. Pleban's cross-examination, however, Capt. Hagger denied making any such suggestion to Mr. Givens.  Mr. Pleban then informed the court that if, on further cross-examination, Capt. Hagger denied the substance of their conversation, Mr. Pleban might have to testify to impeach Capt. Hagger.  Counsel for Messrs. Turner and Kelly appeared to agree that they too wanted to elicit this testimony for purposes of impeachment.

The court outlined alternative courses of action and heard and considered the arguments of counsel before deciding to declare a mistrial. The court disqualified Mr. Pleban as Mr. Givens's attorney, and found as a fact that Mr. Pleban's other attorney was unprepared to continue with the trial.  While Mr. Givens did not object to the disqualification or the declaration of mistrial, Messrs. Turner and Kelly repeatedly objected to a mistrial and expressed their wish to proceed.

The defendants later moved to dismiss their indictment under the Double Jeopardy Clause of the Fifth Amendment.  In rejecting the motion, the court relied on the principles outlined in <u>United</u>

States v. Allen, 984 F.2d 940 (8th Cir. 1993). After reviewing the alternatives, the court held that mistrial was the one least harmful. The district court believed that "by declaring the mistrial and giving the defendants an opportunity to call Mr. Pleban to provide possible impeachment testimony in the next trial, the Court has acted for the benefit of the defendants." The court declined to proceed with a trial against Messrs. Turner and Kelly without Mr. Givens because there was a conspiracy count against all three defendants and because there would have been "overwhelming" prejudice (presumably to the government) if a defendant disappeared and his lead defense counsel took the stand to contradict a government witness. The court therefore concluded that there was manifest necessity for a mistrial and denied the motion to dismiss the indictment.

## II.

We should note that the government describes this case as one raising a conflict-of-interest issue, but this characterization is not quite apposite. This is not, for example, a case in which an attorney represented one defendant and might have to cross-examine a former client who had turned state's evidence. See Wheat v. United States, 486 U.S. 153 (1988). Nor is it a case in which there was evidence that the attorney himself was implicated in his own client's wrongdoing. See United States v. Marren, 919 F.2d 61 (7th Cir. 1990). Instead of a conflict between different clients' interests or between a client's interests and his attorney's self- interest, the problem here is a conflict of courtroom roles, of blurred distinctions between the roles of advocate and witness.

Mr. Pleban created such a problem when he interviewed a witness without another person present. Local rules of the United States District Court for the Eastern District of Missouri (E.D. Mo. L.R. 2(G)(2), superseded by L.R. 12.02), have adopted the Missouri Rules of Professional Conduct, which provide that a lawyer shall not act as an advocate at a trial in which the lawyer is

likely to be a necessary witness except where the testimony relates to an uncontested issue, the testimony relates to the nature and value of legal services rendered in the case, or disqualification of the lawyer would work substantial hardship on the client. Missouri Supreme Court Rule 4, Rule 3.7. While the district court conceivably could have made a finding of hardship that would have enabled Mr. Pleban to testify and represent Mr. Givens, we believe that the court chose the better path in disqualifying Mr. Pleban. (We note, too, that no one objected to Mr. Pleban's disqualification.) The question then is whether Mr. Pleban's contemplated change from attorney to witness made the district court's declaration of mistrial a manifest necessity.


### III.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Retrying a defendant after a mistrial implicates double jeopardy because jeopardy attaches when the first jury is sworn. The double jeopardy doctrine, however, does not prevent all retrials after jeopardy attaches. "The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." Wade v. Hunter, 336 U.S. 684, 688-89 (1949). Double jeopardy will thus not bar retrial when the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice, as, for instance, when an error occurred during the proceedings that would require reversal on appeal, when a jury cannot reach a verdict, or when it becomes apparent at trial that a member of the jury is biased against either the defendant or the government. See

-4-

<u>Illinois v. Somerville</u>, 410 U.S. 458, 463, 468-71 (1973); <u>Wade v. Hunter</u>, 336 U.S. at 689.

The Supreme Court has declined to lay down a rigid formula for evaluating these matters, but has instead adopted one whose value lies in its "capacity for informed application under widely differing circumstances without injury to defendants or the public interest." <u>Id.</u> at 691. Retrial has therefore long been permitted whenever "<u>taking all the circumstances into consideration</u>, there is a manifest necessity for the act [of mistrial], or the ends of public justice would otherwise be defeated," <u>United States v. Perez</u>, 22 U.S. (9 Wheat.) 579, 580 (1824) (emphasis added), but the level of necessity must be of a "high degree" before a mistrial may be declared. <u>Arizona v. Washington</u>, 434 U.S. 497, 506 (1978). "Under [this] rule a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." <u>Wade v. Hunter</u>, 336 U.S. at 690.

Mr. Givens did not specifically object to the declaration of mistrial, and the trial court's finding that his other attorney was unprepared to continue in Mr. Pleban's absence was not clearly erroneous. Objections at trial, however, were handled under an "opt-out" rule under which the objections of one defendant were considered to be the objections of all defendants unless a defendant opted out of that objection. Messrs. Turner and Kelly both strongly objected to the declaration of mistrial, thereby preserving their appeal on the double jeopardy issue, and their objections therefore must be attributed to Mr. Givens. But the court had no option but to declare a mistrial as to Mr. Givens because his other attorney was unprepared to continue, and the court had decided, with good reason, that Mr. Pleban could not serve simultaneously as both attorney and witness. The mistrial declaration as to Mr. Givens was therefore manifestly necessary.

Messrs. Turner and Kelly, however, maintain that the court impermissibly declared a mistrial as to them for purposes of judicial economy. Indeed, the record indicates that the court and the government wanted to try these defendants together on all counts for efficiency reasons, and the trial court in fact referred to the existence of the conspiracy count as one reason for declining to sever the trial. Judicial economy, however, is not a proper basis for a finding of manifest necessity, see, e.g., Allen, 984 F.2d at 942; United States v. Dixon, 913 F.2d 1305, 1315 (8th Cir. 1990), and considerations of judicial economy appear to have played a substantial role in the district court's decision to declare a mistrial rather than sever.

Messrs. Turner and Kelly also argue that the district court failed correctly to weigh the prejudice to them that would result from a declaration of mistrial, and, indeed, many relevant cases emphasize the Fifth Amendment's function of protecting the defendant. The Fifth Amendment encompasses the "valued right" to have one's case decided by a particular jury impaneled for that purpose. See, e.g., Arizona v. Washington, 434 U.S. at 503; United States v. Ford, 17 F.3d 1100, 1102 (8th Cir. 1994); Dixon, 913 F.2d at 1309-10. The right to be free from double jeopardy is of great significance for several reasons: "Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." Arizona v. Washington, 434 U.S. at 503-04 (footnotes omitted). These are serious considerations in deciding whether to declare a mistrial.

Other relevant cases, by contrast, emphasize the harm that can befall the government or the factfinding process by failing to declare a mistrial. Indeed, in our case the court and the government were very concerned about the potential effect on the

jury of the changing role of Mr. Pleban and the disappearance of Mr. Givens as a defendant, and the government has cited a case holding that declaring a mistrial under somewhat analogous circumstances was not an abuse of discretion. See United States v. Arrington, 867 F.2d 122, 125-26 (2d Cir.), cert. denied, 493 U.S. 817 (1989). In Arrington, the government asserted during trial that one of the defense attorneys had coerced the government's confidential informant into recanting his anticipated testimony. Counsel for the other defendants stated their intention of calling that attorney to testify, presumably regarding the inconstancy of the informant. The district court declared a mistrial in light of the attorney's anticipated transition from advocate to witness. On appeal, the Second Circuit noted the potential effect of the attorney's dual role as both witness and advocate, and worried that such a performance could so blur the line between argument and evidence as to undermine the jury's ability to find the facts properly. The court concluded that the mistrial was an appropriate exercise of discretion because of the unlikelihood that a jury could differentiate between counsel's role as witness and his role as advocate. "Once a jury sees an attorney take an oath on the witness stand, it may accord testimonial weight to that which he has argued, or it may place undue weight on the testimony of an officer of the court." 867 F.2d at 126 (citations omitted). Arrington thus emphasizes the potential prejudice to the government and the factfinding process.

The manifest necessity standard does not require us to look at the mistrial dilemma from a single point of view. It is a flexible standard which seeks fairness to the defendant, the government, and the public interest alike. See, e.g., Wade v. Hunter, 336 U.S. at 691; Perez, 22 U.S. at 580. The dispute at hand therefore requires us to consider both the defendant's right to be free from the burdens of a mistrial as well as the possibility that the jury's factfinding ability might be compromised by an unusual and confusing twist at trial. While Arrington makes a good case for

the potentially confusing effect that an attorney's changing role might have on a jury, we believe that we must also give at least as much weight to the actual prejudice to the defendants whom the government and the district court wanted to subject to another trial. In addition, the district court and the government offer little insight (other than a limited amount of conjecture) into the nature and extent of any prejudice to either side of allowing Mr. Pleban to testify. While we accord the highest degree of respect to a trial judge's finding of juror bias as a basis for a mistrial, see Arizona v. Washington, 434 U.S. at 513-14, this is not a case in which any member of the jury was suspected of harboring an actual bias. The trial court's speculation about the possible effects of a change in role by a trial attorney is not entitled to any particular deference, nor do we think, on balance, that those effects would have been substantial. See Allen, 984 F.2d at 942 ("Practical considerations and speculation ... cannot serve as a basis for manifest necessity."). It seems to us particularly unlikely that the prejudice would have been large in this instance because Mr. Pleban's testimony would have been relevant only to a collateral issue, namely, the credibility of one government witness.

We offer some comments on Allen, supra, regarding the standards that it adopted and which the district court applied in this case. The Allen court listed four considerations from United States v. Bates, 917 F.2d 388, 395-96 (9th Cir. 1993), but ultimately relied on only one, namely, whether the mistrial declaration would benefit the defendant. Allen appeared to find a lack of manifest necessity in "the fact that it was uncertain whether Allen would benefit from the mistrial." 984 F.2d at 943. This intimates that the Fifth Amendment requires that all mistrial declarations must benefit the defendant. But Bates simply explains that mistrial declarations made for the defendant's benefit are treated favorably because double jeopardy does not forbid retrial where a mistrial has been granted for the defendant's benefit. Id.

at 943 (quoting <u>Gori v. United States</u>, 367 U.S. 364, 369 (1961)). A lack of benefit to the defendant, however, does not automatically mean that retrial is barred, because, just to name a few examples, retrial is permitted where the jury is unable to reach a verdict or a juror is biased toward the government, despite the lack of obvious benefit to the defendant from retrial in such circumstances. <u>See, e.g.</u>, <u>Wade v. Hunter</u>, 336 U.S. at 689.

In sum, we believe that the nature of the prejudice, if any, to the jury's ability to give proper weight to an advocate or a witness pales in comparison to the prejudice to the defendants of facing a retrial. We believe that a cautionary instruction to the jury would have almost certainly undone any potential prejudice to the government, especially since Mr. Pleban had not been representing Messrs. Turner and Kelly. It is even possible that the jury, far from drawing inferences against the government from Mr. Pleban's testimony, might have discounted it because of his former role as an advocate for one of the defendants. The district court erred in weighing the alternatives less drastic than mistrial, particularly in rejecting the more favorable alternative of severance, and in relying on forbidden considerations of judicial economy in declaring a mistrial. This case could have been severed and tried to a result without offending the interests of justice. "While it is regrettable when serious charges of criminal conduct go untried, such a result is necessary in this case to protect the right of all citizens not to be twice put in jeopardy for the same offense, a right `that was dearly won and one that should continue to be highly valued.'" <u>Dixon</u>, 913 F.2d at 1315 (quoting <u>Green v. United States</u>, 355 U.S. 184, 198 (1957)).

IV.

For the foregoing reasons, we reverse the judgment of the district court as to Messrs. Turner and Kelly, affirm as to Mr. Givens, and remand for further proceedings consistent with this opinion.

A true copy.

   Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.