GREGORY, Circuit Judge,
dissenting:
In nine short sentences immediately following the prosecution’s motion for a continuance or mistrial, the trial court in this case declared a mistrial without ade *218 quately considering reasonable alternatives to what was undoubtedly a drastic course of action. A month later, the court issued a written order setting forth constitutionally insufficient justifications for its actions. Under these circumstances, I cannot conclude that “the trial judge expressed concern regarding the possible double jeopardy consequences of an erroneous declaration of a mistrial, heard extensive argument on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial.” Gilliam v. Foster, 75 F.3d 881, 895 (4th Cir.1996) (en banc), cert. denied, 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996).
I.
The majority has thoroughly set forth the facts, and I do not read them differently. Relevant to my consideration, however, is the following: On October 10, 2000, the second day of Baum’s trial, the prosecution moved for a continuance or mistrial based on the discovery of Pinion’s body. At that point, the jury had been sworn in and had heard the testimony of three witnesses. Baum opposed the motion, but the trial court granted it. In granting the mistrial, the court stated, in its entirety:
I’m going to declare a mistrial. I have received an affidavit from the dentist. Based on his review of the situation and a conference with the medical examiner for the state of North Carolina, based on the level of certainty that this may, indeed, be the remains of Mr. Pinion, that a mistrial is warranted for good cause, not the result of anything caused or done, an act or omission by the state. I feel this is a matter of manifest necessity and that jeopardy will continue. Jeopardy does not attach and begin anew in my firm judgment, and I so rule that this is a matter of manifest necessity that potentially could inure to the benefit of the defendant. A key issue in the case was the fact that the body had not been found. This revelation is significant. And if it actually turns out, based on the scientific examination, that this is indeed the remains of Mr. Pinion, then this case should well not continue and be retried at another date.
Again, I note jeopardy will continue, and that’s my ruling in the case.
(J.A. 43-44.) On November 8, 2000, approximately one month after the court granted the state’s motion for a mistrial, it issued a written order explaining its reasoning for doing so.
At Baum’s second trial, he argued that the Double Jeopardy Clause barred the proceedings, but the judge denied the motion, noting, “I agree with your argument, but I can’t grant you the relief simply because under the existing case law of this state the previous trial judge has tied my hands and I have no authority to override his order.” (J.A. 65.) On January 24, 2001, the jury found Baum guilty, and the judge sentenced him to life in prison.
II.
The Double Jeopardy Clause of the Fifth Amendment mandates that no “person be subject for the same offence to be twice put in jeopardy of life or limb.” The Supreme Court has instructed that “[w]e resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.” Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (internal quotation omitted).
In Arizona v. Washington, the Supreme Court recognized that a second trial “increases the financial and emotional burden *219 on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.” 434 U.S. 497, 503-04, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (internal footnote omitted). Thus, “in view of the importance of the right [to freedom from double jeopardy], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one.” Id. at 505, 98 S.Ct. 824.
In Gilliam v. Foster, this Court noted, “If the grant of a mistrial by the trial judge amounts to an irrational or irresponsible act, he must be found to have abused his discretion in finding that manifest necessity for the mistrial existed.” 75 F.3d at 894. In making this assessment, the Court, construing Supreme Court precedent, set forth two prongs for a reviewing court to consider: first, “whether a trial judge rationally could conclude that the grant of the mistrial was compelled by manifest necessity or whether the ends of public justice demanded that one be granted on the peculiar facts presented.” Id. Additionally, a court should consider whether the judge “acted precipitately or whether the trial judge expressed concern regarding the possible double jeopardy consequences of an erroneous declaration of a mistrial, heard extensive argument on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial.” Id. at 895.
Applying these factors to the present case, first, the trial court’s rationale behind its finding of manifest necessity was grossly insufficient. At trial, the court’s primary reason for declaring the mistrial was that it viewed Pinion’s body to be crucial evidence without which a trial could not proceed. Yet both the state and the appellant were prepared to proceed to trial without the body. The state was prepared to present what it thought was sufficient evidence to support its theory that Baum murdered his stepfather (“I believe myself and the family who are here behind me are as ready as the defendant himself to get this behind us.” (J.A. 43)), and the defense was prepared to defend against such a theory (“We are here. We’re ready for trial. And we’re ready to proceed, your honor.” (Id.)). Neither side depended on Pinion’s body for its case. Thus, the body could not have reasonably been viewed as crucial evidence whose absence would undermine the trial.
Notably, the trial court did not consider at the time of the mistrial declaration whether there were alternatives to a mistrial, and it did not hear extensive argument on the appropriateness of the mistrial.
In order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available. If alternatives existed, then society’s interest in fair trials designed to end in just judgments was not in conflict with the defendant’s right to have the case submitted to the jury.
United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir.1993) (internal quotations and citations omitted) (emphasis added); see also Harris v. Young, 607 F.2d 1081, 1085 n. 4 (4th Cir.1979) (“If obvious and adequate alternatives to aborting the trial were disregarded, this suggests the trial judge acted unjustifiably.”).
There is no indication in the record as to why a two-month suspension of Baum’s trial would have been necessary in order to examine the body properly. As we noted in United States v. Sloan, “ ‘Speculation ... cannot serve as a basis for manifest *220 necessity.’ ” 36 F.3d 386, 400 (4th Cir.1994) (quoting United States v. Allen, 984 F.2d 940, 942 (8th Cir.1993)) (alteration in original). In actuality, the coroner’s report was ready at the end of the day the mistrial was actually granted. At most, therefore, the trial would have had to have been suspended only a short period of time in order to allow each side to assess the newly acquired evidence. See, e.g., Dunkerley v. Hogan, 579 F.2d 141, 148 (2d Cir.1978) (“[T]he apparent availability of at least one alternative to a mistrial — adjourning the trial for 7 to 10 days — leads us to conclude that a mistrial was not a ‘manifest necessity.’ ”). Tellingly, the prosecutor asked for either a continuance or a mistrial. Thus, even the state thought that a continuance would have been sufficient to consider the new evidence.
Of course, the trial court did not know at the time how long it would take to examine Pinion’s body, and deference is owed to the court in its assessment of whether a continuance is warranted. But deference is not blind approval, and “[i]f the record reveals that the trial judge has failed to exercise the ‘sound discretion’ entrusted to him, the reason for such deference by an appellate court disappears.” Washington, 434 U.S. at 510 n. 28, 98 S.Ct. 824; see also Gilliam, 75 F.3d at 900. The record in this case presents absolutely no justification for the trial judge’s two-month estimate. As the Gilliam Court aptly noted in that case:
If the situation facing this state trial court could be found to support a conclusion that manifest necessity or the ends of public justice required the grant of a mistrial, those words have little meaning, and the standard for trial judges to employ in deciding the appropriateness of the grant of a mistrial may as well be articulated in terms of whether a trial judge in good faith deems the mistrial advisable. Moreover, if the circumstances surrounding the grant of this mistrial could be found to sustain a determination that the state trial judge exercised sound discretion in granting a mistrial, there would be little point to providing any level of judicial review of such decisions.
75 F.3d at 903. Similarly, the Sloan Court concluded that, “[i]f the court below had explored alternatives, it would have had to recognize that declaration of a mistrial was unnecessary.” 36 F.3d at 400. Likewise, had the trial court taken the reasonable course of action in this case and granted even a short continuance to properly ascertain how quickly information could be gathered, it likely would have discovered that, due to the state of the body’s decomposition and the limited amount of evidence that could be gathered from it, the potential for undue delay did not necessitate a mistrial.
To compound the injury, the court’s written order supporting the mistrial declaration, issued approximately one month after the oral declaration, did little to justify its actions. The court found that because Baum had been unable to post bond, “it was imperative upon the State to proceed to trial without further delay” (no explanation as to how this factors into the mistrial calculus); that there was no other alternative to mistrial (no explanation); that it would have been too risky not to examine the body (a mistrial was not necessary to do this); that evidence could have been favorable to the defense (possible, but still not a justification for a mistrial); and that “to suspend the trial of the case and allow the sitting jury to resume the trial approximately two months later would be fundamentally unfair to all concerned ... and contrary to the ends of justice” (again, no support for this two-month estimate). (J.A. 46-47.)
*221 The written order did not, under any reasonable reading, adequately address why a continuance would not be sufficient or whether the court considered any other alternatives to a mistrial. “A judge cannot find that manifest necessity requires declaration of a mistrial ‘until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.’ ” Sloan, 36 F.3d at 393-94 (quoting United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality) (emphasis added)). AEDPA requires us to give deference to state court decisions. But AEDPA does not require us to turn a blind eye to a mistrial declaration that flies in the face of the Constitution and Supreme Court precedent.
III.
The record in this case reveals that the state trial court impermissibly ended Baum’s first trial and unnecessarily opened the courthouse doors for a second prosecution. We must not take lightly the harm that results from being twice subjected to jeopardy. Likewise, we must not denigrate the defendant’s “valued right to have his trial completed by a particular tribunal.” Washington, 434 U.S. at 503, 98 S.Ct. 824 (internal quotation omitted). Even if I were to assume, as the majority holds, that strict scrutiny does not apply to this case, I am convinced that the state trial court abused its discretion in declaring a mistrial for manifest necessity and that such abuse was contrary to clearly established Supreme Court precedent. Thus, I am compelled to dissent.