J-A20018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN EDWARD LEE | |
| Appellant | No. 464 WDA 2015 |

Appeal from the Order February 13, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No: CP-43-CR-0000967-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN EDWARD LEE | |
| Appellant | No. 169 WDA 2016 |

Appeal from the Order January 8, 2016
In the Court of Common Pleas of Mercer County
Criminal Division at No: CP-43-CR-0000967-2014

BEFORE:  BOWES, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:               **FILED FEBRUARY 07, 2017**

Appellant, Shawn Edward Lee, appeals from the order entered in the Mercer County Court of Common Pleas that denied his motion to dismiss based on double jeopardy.  This case returns to us after we remanded to

have the trial court comply with Pa.R.Crim.P. 587(B), to clarify whether this Court had appellate jurisdiction. Appellant contends the trial court erred by *sua sponte* granting a mistrial absent a finding of manifest necessity. We conclude we have appellate jurisdiction and reverse.

We need not discuss the facts underlying Appellant's alleged offenses of, *inter alia*, murder of the second degree and murder of the third degree. On the third day of a jury trial, during the Commonwealth's case-in-chief, the following exchange transpired between Colleen Pritts, Appellant's girlfriend, and the Commonwealth:

> [District attorney:] What type of a relationship did you have with [Appellant]?
>
> A: He's my boyfriend.
>
> Q: For how long was he your boyfriend on May 13, 2013?
>
> A: Four years at that point. We had been together since he got out of prison in –
>
> [Appellant's counsel:] Your Honor --
>
> [Trial court:] Granted. Ladies and Gentlemen, I have had to grant a mistrial. It means we have to start and do this over again. You will be excused from further service. We'll clear the courtroom and I will talk to you. Please step down.

N.T. Trial, 2/13/14, at 63-64. The transcript does not reflect any objection or other communication by either Appellant's counsel or the district attorney prior to the jury's dismissal.

After the jury was dismissed and the trial court spoke with the jury, the following discussion occurred:

> The court: Please be seated.  [Appellant's counsel], do you wish to put things on the record?
>
> [Appellant's counsel]: Yes, Your Honor.  For the record, before the Court came in we did have the court reporter read back the testimony from the time that Ms. Pritts was asked the last question and responded.  The record indicates that I said, "Your Honor"; the Court said, "granted", and there was no other discussion and the Court cleared the room.
>
> The court: There was an order entered before I did that, clearly.
>
> [Appellant's counsel] I'm sorry, Your Honor?
>
> The court: I entered an order before I cleared the courtroom.  There has to be an order granting the mistrial.
>
> [Appellant's counsel]: We didn't get that far on the transcript, apparently, Your Honor.
>
> At any rate, the defense would cite -- bring the Court's attention to Rule 605(b): When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial.  The motion shall be made when the event is disclosed; otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.
>
> We note for the record that when Ms. Pritts gave her answer to [the district attorney's] question I stood up and said, "Your Honor".  It was my intention, as it normally is when these things arise, to request a sidebar or a recess to discuss or consider our options.  I never got to do so because the Court stated "granted", and in our opinion sua sponte declared a mistrial and cleared the courtroom.
>
> We would note that there was no discussion or consideration of any less drastic options.  It is our position that [Appellant] is prejudiced.   In the opinion of the

- 3 -

defense team the case was going very well for the defense. We have now been deprived of our jury. The Commonwealth now knows essentially all of the defense strategy, and one key Commonwealth's witness, as the Court is aware, is missing and currently has not been found.

It is our position that Ms. Pritts' statement could have been addressed with a precautionary instruction, as the Court had previously suggested, as to the testimony of Mr. Huey where he indicated he had been continuously incarcerated since his arrest but had spoken to [Appellant]. Therefore, we would like to place on the record our objection to the Court sua sponte the declaration of a mistrial [sic], and we would ask that the Court order that [Appellant] be barred from being retried for reasons of double jeopardy.

We cite to the Court the Commonwealth versus Diehl, 615 A.2d 690, a 1992 Pennsylvania Supreme Court case that held the trial court erred in awarding [sic] the appellant retried, where doing so impermissibly placed him again in jeopardy after the Court declared a mistrial sua sponte. It is well settled the declaration of a mistrial sua sponte by the trial court is proper only for reasons of manifest necessity. If there is any doubt as to the presence of manifest necessity to support the trial court's declaration of a mistrial, such doubt is to be resolved in favor of the accused, and double jeopardy shall prohibit a retrial.

We have a number of other cases, Judge, but we believe that that's the one that's on point. We would therefore ask the Court that [Appellant] not be retried.

[The court]: The Court will note for the record several things:

Number one, Ms. Pritts testified she saw him when he got out of prison. That was diametrically different than what Mr. Huey testified to. Mr. Huey's implication was that he was in jail. Clearly this was not—at that point in time the Court is faced with manifest necessity because if you don't declare a mistrial [Appellant] has an automatic right to a new trial for ineffective assistance of counsel. You would be per se ineffective. The courts clearly have shown that

- 4 -

this is not something to be cured by a cautionary instruction.

Two, when I said "granted", I didn't say anything other than that. You did not seek to clarify. It was done by a waiver on your part, clearly.

I'll enter this order:

AND NOW, 13th day of February, 2015, IT IS HEREBY ORDERED [Appellant's] Motion to Dismiss pursuant to a double jeopardy violation is DENIED.

N.T. Post-Trial Hearing, 2/13/15, at 2-6. The district attorney said nothing.

The trial court's order was docketed on February 17, 2015, and Appellant timely appealed on March 16, 2015. On March 17, 2015,[1] the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement prior to March 31, 2015.[2] Appellant filed his Rule 1925(b) statement on March 31, 2015, and the court filed a responsive opinion on May 8, 2015. The trial court, in justifying its decision, noted the following:

The primary witnesses against [Appellant] were his co-defendant's [sic] Miguel Huey and Zachariah Owens. Both defendants had pled guilty pursuant to extremely generous plea bargains. Both co-defendant [sic] testified that Huey entered [the robbery victim's residence] to scout out the place and then left. Owens and [Appellant] then entered the residence to commit the robbery. Owens further

_____

[1] The order was dated March 16, 2015.

[2] We note the trial court's order contravenes Rule 1925(b)(2), which states "The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the" Rule 1925(b) statement. Pa.R.A.P. 1925(b)(2).

testified that he [*i.e.*, Appellant,] fired the shot that killed [the decedent].

[The robbery victim] and his brother Bradley both testified that Huey was an active participant in the robbery. Their testimony directly contradicted Huey's and Owens' version of the incident.

\* \* \*

The sole witnesses to implicate [Appellant] in the murder were his co-defendants. Both co-defendants received generous plea bargains to testify against [Appellant]. Their versions of the incident substantially and dramatically [sic] from the testimony of the decedent's sons, [*i.e.*, the robbery victim and his brother,] who witnessed the incident.

Trial Court Opinion, 5/8/15, at 2, 5.

On November 23, 2015, this Court remanded to have the trial court comply with Pa.R.Crim.P. 587(B), and to file a supplemental Rule 1925(a) decision. Appellant formally filed a motion to bar retrial and dismiss the case on January 6, 2016.

On January 11, 2016, the trial court filed an order with findings of fact and conclusions of law, in accordance with Rule 587(B). In relevant part, the trial court made the following findings of fact:

4. [Appellant's] [c]ounsel at that point stood up and said, "Your Honor."

5. The [trial] court in one continuous statement said, "Granted," and advised the jury that the court was declaring a mistrial and ordered the courtroom cleared.

6. The [trial] court stepped down from the bench so he could speak to the jury to explain what had occurred.

7. As the the [sic] [trial] court was walking toward the jury box, counsel for [Appellant] again stated, "Your Honor".

8. The [trial] court next reaffirmed its order that the courtroom be cleared.

9. When the courtroom reopened, counsel[3] again approached the bench and asked the court to reconvene.

10. The [trial] court indicated there would be no court reporter available as it was the lunch hour, and we would reconvene after the lunch hour.

11. The [trial] court reconvened immediately after the lunch hour.

12. [Appellant's] [c]ounsel at that point in time put on the record an objection to the [trial] court *sua sponte* granting a mistrial and made a motion that [Appellant] be barred from retrial.

Order, 1/11/16, at 2.

The trial court's order opined manifest necessity existed for a mistrial:

The [c]ourt finds there was manifest necessity because the testimony established that [Appellant] had been in prison prior to this incident and it would taint the [j]ury. The [c]ourt notes that the case at that point in time was favorable to [Appellant] and the Commonwealth was, in this [c]ourt's opinion, losing; and as a result, this [c]ourt believes that any conviction would have been based upon that taint.

*Id.* at 3. The trial court also held Appellant's motion for mistrial was not

frivolous, *id.* at 3, notified Appellant that the order was immediately

appealable, **see generally** Pa.R.Crim.P. 587(B), and filed a supplemental

_____

[3] Apparently, the trial court was referencing Appellant's counsel.

Rule 1925(a) decision. We are satisfied the trial court complied with our prior mandate to comply with Rule 587(B), and that we have jurisdiction to entertain Appellant's appeal. Accordingly, we address the merits.

Appellant raises the following issue:

> Whether the [t]rial [c]ourt erred when the [t]rial [c]ourt denied Appellant's motion to dismiss and to bar retrial based upon a double jeopardy violation, in contravention of [s]tate and/or [f]ederal constitutional safeguards, when the [t]rial [c]ourt declared a mistrial *sua sponte*, which declaration was not supported by manifest necessity.

Appellant's Brief at ii.

Appellant contends the trial court failed to consider any alternatives to a mistrial before declaring a mistrial. He points out that the Commonwealth did not deliberately elicit Ms. Pritts's statement. Appellant maintains that a cautionary instruction would have cured any prejudice from her comment. He opines the trial was going favorably for him prior to the trial court's order. Appellant asserts the Commonwealth has knowledge of his entire defense strategy and additional time to locate a witness who was missing at the time of trial.

In response, the Commonwealth observes, "[t]here are no bright-line rules or mechanical formulas for determining whether manifest necessity existed for" a mistrial. Commonwealth's Brief at 11. In the Commonwealth's view, however, the trial court's order granting a mistrial was a foregone conclusion "wholly consistent with case law that has found even a single reference to a defendant's having been incarcerated on an

unrelated charge fatal to the prosecution." *Id.* at 12. We hold Appellant is due relief.

We review the trial court's decision to declare a mistrial *sua sponte* for abuse of discretion. The trial court's decision to declare a mistrial rests on the trial court's "sound, and conscientious exercise of [] discretion," but "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. 579, 580 (1824).[4] While the trial court's decision to declare mistrial is accorded broad deference,

> [t]his is not to say that we grant *absolute* deference to trial judges in this context. *Perez* itself noted that the judge's exercise of discretion must be "sound," [*id.*], and we have made clear that "[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." [*Arizona v. Washington*, 434 U.S. 497, 510 n.28 (1978)]. Thus "if the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate." *Ibid.* Similarly, "if a trial judge acts irrationally or irresponsibly, . . . his action cannot be condoned." *Id.,* at 514 [] (citing *United States v. Jorn,* 400 U.S. 470 [] (1971), and [*Illinois v. Somerville*, 410 U.S. 458, 469 (1973)].

*Renico v. Lett*, 559 US 766, 775 (2010) (emphasis in original).

As our Supreme Court noted:

---

[4] In determining whether the declaration of mistrial is supported by "manifest necessity," we apply the standards set forth in both Pennsylvania and federal case law. *Commonwealth v. Diehl*, 615 A.2d 690, 691 (Pa. 1992); *Commonwealth v. Mitchell*, 410 A.2d 1232, 1233 (Pa. 1980).

- 9 -

in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.

***Commonwealth ex rel. Walton v. Aytch***, 352 A.2d 4, 8 (Pa. 1976) (citing

***Jorn***, 400 U.S. at 486)).

In determining whether the trial court abused its discretion by declaring a mistrial *sua sponte*, we are guided by the following principles.

Pennsylvania Rule of Criminal Procedure 605(B) provides that "when an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim. 605(B).

> The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. For that reason Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance in the decision of a wide variety of cases. Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate. The question whether that "high degree" has been reached is answered more easily in some kinds of cases than in others. At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. . . . At the other extreme is the mistrial premised upon the trial judge's belief that

the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial.

***Washington***, 434 U.S. at 505-6 (footnotes omitted).[5]

Similarly, while our courts have refrained from "establishing a catalog of situations in which a mistrial is dictated by manifest necessity, and has instead stated that each case must turn on the particular facts," ***Commonwealth v Balog***, 576 A.2d 1092, 1095 (Pa. Super. 1990), we have established certain significant factors to consider in determining whether the trial court abused its discretion in declaring *sua sponte a* mistrial. For example, the Supreme Court held that the failure on the part of the trial court to consider less drastic alternatives to a mistrial "creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for

_____

[5] Justice Story articulated the "manifest necessity" standard as follows:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes[.] But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

***Perez***, 22 U.S. at 580.

- 11 -

barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury." *Diehl*, 615 A.2d at 691 (citation omitted); *see also, e.g., Commonwealth v. Kelly*, 797 A.2d 925 (Pa. Super. 2002);[6] *Commonwealth v. McCord*, 700 A.2d 938 (Pa. Super. 1997);[7] *Commonwealth v. Hatten*, 496 A.2d 837 (Pa. Super. 1985).[8]

_____

[6] The *Kelly* Court held double jeopardy applied to bar a subsequent prosecution because the trial court failed to consider alternative options prior to *sua sponte* ordering a mistrial:

> Upon review, we conclude that the trial court acted prematurely in ordering a mistrial. In other words, manifest necessity for a mistrial was not demonstrable at the time the court *sua sponte* ended the trial. We do not believe the trial court adequately considered other less severe options before compelling [the defendants] to forfeit their right to have the trial completed and to undergo another prosecution.

*Kelly*, 797 A.2d at 940 (emphasis added).

[7] In *McCord*, this Court noted:

> A failure of the lower court to consider less drastic alternatives before declaring a mistrial creates doubt about the exercise of the court's discretion and may bar re-prosecution because of double jeopardy. The determination of whether to declare a mistrial after jeopardy has attached is one of utmost importance since the defendant has a substantial interest in having his fate determined by the jury first impaneled.

*McCord*, 700 A.2d at 943.

[8] In *Hatten*,

*(Footnote Continued Next Page)*

- 12 -

The failure to consult with parties regarding the propriety of declaring a mistrial also has been viewed by our Supreme Court as a factor tending to demonstrate an abuse of discretion.  ***See Walton***, ***supra***.  In ***Walton***,

> during the course of the trial, the trial judge decided that the jury had to be sequestered because of the surrounding publicity. Two of the jurors asked to be excused because of the hardship this would cause, with the result that there were no alternate jurors available.  Subsequently, the judge was informed that one of the twelve remaining jurors was very distressed because she had been unable to find a baby-sitter for her children.  As a result, without consulting either counsel, the trial judge allowed the juror to go home without requesting her to return the next day, and the trial was aborted

***Balog***, 576 A.2d at 1096 (discussing ***Walton***, 352 A.2d at 9).

> Our Supreme Court noted:
>
> The trial court could have at least attempted to contact both attorneys involved in the case to ascertain if they had any suggestions.  In order to properly exercise his discretion, the trial judge should have sought out such suggestions, particularly those of defense counsel, in order to indicate that the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> we held that a prosecutor's disclosure in a joint trial of defendant and her co-defendant, that co-defendant had threatened the complaining witness, did not justify a declaration of a mistrial, when the mistrial was requested only by the co-defendant and the defendant requested a severance of the two cases in order to proceed with the trial.  Apart from failing to consider the alternatives to declaring a mistrial, this [C]ourt noted that disclosure of the defendant's threat would not have necessarily required reversal on appeal had appellant been convicted. Therefore, it was held that a mistrial was not manifestly necessary, and the trial court should have severed the two cases.

***Balog***, 576 A.2d at 1096-97.

determination was tempered by a consideration of Walton's interest.

***Walton***, 352 A.2d at 8.

Similarly, in ***Commonwealth v. Bartolomucci***, 362 A.2d 234 (Pa. 1976), our Supreme Court found that the trial court failed to inquire directly of the jury about the "hopeless deadlock" and that such failure "made the necessity of the mistrial not manifest and thus open to doubt." ***Id.*** at 239. To this end, the Court noted:

> The doubt stems from the trial court's failure to inquire directly of the jury, either individually or through the foreman, about the possibility of the deadlock being overcome by further deliberations. Such an inquiry would have served to remove any doubt, and thus, would have provided greater certainty as to the existence of a deadlock and the hopelessness of breaking it. If an individual inquiry were made, the trial court would have then had the opinion of each juror as to the existence and hopelessness of the deadlock.

***Id.***

In light of the foregoing, the Supreme Court ultimately concluded that the trial court's declaration of a mistrial was not manifestly necessary, thus subject to doubt regarding its propriety. ***Id.*** at 239-40.

Finally, we note that if the trial court's decision to *sua sponte* declare a mistrial is not supported by manifest necessity double jeopardy principles preclude a new prosecution. ***See***, ***e.g.***, ***Washington***, 434 U.S. at 505; ***Jorn***, 400 U.S. at 484-85; ***Kelly***, 797 A.2d at 942; ***Commonwealth v. Rivera***, 715 A.2d 1136, 1140 (Pa. Super. 1998); ***Balog***, 576 A.2d at 1098.

A review of the record reveals the trial court hastily declared a mistrial, providing no explanation as to the reasons for its decision.[9] Additionally, there is no record of an attempt by the trial court to consult with the parties or consideration of less drastic alternatives to mistrial, following the statement proffered by the witness. The trial court declared a mistrial and released the jury without giving the parties an opportunity to address its decision. In light of the foregoing, we are constrained to conclude that these failures "made the necessity of the mistrial not manifest and thus open to doubt." **Bartolomucci**, 363 A.2d at 239; **see also Walton**, 352 A.2d at 8.[10] Because any doubt regarding the propriety of the

_____

[9] We are not suggesting that the trial court at the time it declared a mistrial "was required to make explicit findings of 'manifest necessity' [or] to articulate on the record all the factors which informed the deliberate exercise of his discretion." **Washington**, 434 U.S. at 517. However, the record should adequately disclose the basis for the trial court's mistrial order. **Id.** Here, the record is barren of reasons for the mistrial. To the extent that one could surmise the trial court's reasons for declaring a mistrial, after defense counsel merely proffered "Your Honor," following the witness' statement, there is no indication that said reasons were "plain" and "obvious," **Perez**, **supra**, such as to justify a *sua sponte* declaration of a mistrial for manifest necessity. Indeed, if defense counsel would not have a problem with a cautionary a jury instruction, then the reasons for mistrial were not so plain and obvious as to warrant a *sua sponte* declaration of mistrial.

[10] In **United States v. Sanders**, 591 F.2d 1293 (9th Cir. 1979), the Court of Appeals noted:

> When the record is barren of reasons for the mistrial . . . or reveals that the judge failed adequately to consider feasible alternatives to a mistrial, then the decision to declare a mistrial may be reversed by a reviewing court, despite the high degree

*(Footnote Continued Next Page)*

exercise of discretion of manifest necessity must be be resolved in favor of defendant, **Bartolomucci**, 33 A.2d at 239, we must conclude the mistrial was not manifestly necessary and reverse the order of the trial court denying Appellant's motion to dismiss on double jeopardy grounds.

The reasons behind the trial court's decision were disclosed only after the trial court declared a mistrial and subsequent to the release of the jury. In its *post facto* explanation of the basis for its decision, the trial court suggested that the witness's comment was prejudicial to Appellant, insomuch that it even speculated that if Appellant were found guilty, the conviction rested solely upon the comment. Trial Court Order, 1/11/16, at 2-3.

There is no *per se* rule that any mention of a defendant's prior criminal activity warrants a mistrial. **Commonwealth v. Morris**, 519 A.2d 374, 377 (Pa. 1986) ("There is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity" (citing **Commonwealth v. Heaton**, 472 A.2d 1068 (Pa. 1984)); **Commonwealth v. Richardson**, 437 A.2d 1162, 1165 (Pa. 1981) ("Our decisions have indicated that there are situations where the taint, resulting from an

*(Footnote Continued)* ─────────────

of deference to be accorded the conclusions of the trial judge in such cases.

**Sanders**, 591 F.2d at 1299.

improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial."); *Commonwealth v. Williams*, 368 A.2d 249, 252 (Pa. 1977) ("We have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy"); *Commonwealth v. Valerio*, 712 A.2d 301, 303 (Pa. Super. 1998) (holding, "there is no 'per se' rule requiring a new trial for every reference" to a defendant's prior criminal activity); *Commonwealth v. Colon*, 399 A.2d 1068, 1071 (Pa. Super. 1979) (same).[11]

Moreover, "[a]n immediate curative instruction to the jury may alleviate any harm to the defendant that results from reference to prior

---

[11] In its brief, the Commonwealth cites to a number of cases apparently for the proposition that a single reference to a defendant having previously been incarcerated constitutes reversible error. A closer review of these cases, however, reveals a more nuanced articulation of the principle of law relied upon by the Commonwealth. Indeed, "reversal is not warranted unless the record indicates that prejudice RESULTED from the remark." *Commonwealth v. Bricker*, 548 A.2d 604, 607 (Pa. Super. 1988) (emphasis in original). "Further, 'passing references' to prior criminal activity do not warrant reversal." *Commonwealth v. Nichols*, 400 A.2d 1281, 1282 (Pa. 1979) (citing *Commonwealth v. Irwin*, 381 A.2d 444 (Pa. 1977); *Commonwealth v. McFadden*, 346 A.2d 550 (Pa. 1975); *Commonwealth v. Sharpe*, 296 A.2d 519 (Pa. 1972)). "Moreover, whether the remark was intentionally elicited by the Commonwealth, and whether cautionary instructions were given, are considerations relevant to the determination of whether a mistrial is required. In certain situations, curative instructions may suffice to remove the taint of unintentional and innocuous references to prior criminal activity." *Commonwealth v. Ford*, 607 A.2d 764, 766-67 (Pa. Super. 1992).

criminal conduct." ***Morris***, 519 A.2d at 377 (citing ***Commonwealth v. Whitfield***, 376 A.2d 617 (Pa. 1977) (jury was instructed to disregard a witness's testimony that he had previously seen defendant "work people over")); ***Williams***, 368 A.2d at 252 (jury was instructed to disregard a witness's testimony concerning defendant's unrelated use of drugs); ***Commonwealth v. Povish***, 387 A.2d 1282 (Pa. 1978) (jury instructed to disregard testimony concerning a robbery for which defendant was charged but not then being tried); and ***Richardson***, *supra*, (jury instructed to disregard a witness's testimony concerning a prior burglary of the same residence for which defendant was then on trial)).

It should be noted that in the above cited cases, the defendants requested a mistrial,[12] rather than the court declaring one *sua sponte*. In each of those cases, the trial court's decision to deny a motion for a mistrial was upheld on appeal. In the matter *sub judice*, not only there was no request from Appellant for a mistrial or new trial, it is clear that the trial court was operating under the mistaken belief that there is a *per se* rule that any mention of Appellant's criminal activity warrants a mistrial. ***See*** N.T. Post-Trial Hearing, 2/13/15, at 5. Therefore, as in ***Balog*** and ***Hatten***, the fact that the witness statement would not necessarily warrant reversal upon

---

[12] In ***Morris*** and ***Whitfield***, the defendants requested a new trial instead of a mistrial.

appeal, is further evidence that the declaration of a mistrial here was not manifestly necessary. **See Balog**, 576 A.2d at 1097.

Furthermore, the trial court's speculation that Appellant would be convicted based on the statement made by the witness was in error.

> "[S]peculation . . . cannot serve as a basis for manifest necessity." **United States v. Allen**, 984 F.2d 940, 942 (8th Cir. 1993). Thus, '[e]ven if the trial judge believes in subjective good faith that a mistrial is called for,' an appellate court 'must reverse if the record belies his concerns.' **United States v. Meza-Soria**, 935 F.2d 166, 171 (9th Cir. 1991). As the Supreme Court has explained, when 'the record reveals that the trial judge has failed to exercise the "sound discretion" entrusted to him, the reason for deference [to his discretion] by an appellate court disappears.' **Washington**, 434 U.S. at 510 n.28[.]

**United States v. Sloan**, 36 F.3d 386, 400-401 (4th Cir. 1994). While the trial court genuinely believed that the witness's comment warranted a *sua sponte* declaration of mistrial, as explained herein, the record and the law do not support the court's ruling.

The trial court's speculation that defense counsel was about to ask for a mistrial following the witness's statement in open court also was in error. Indeed, the trial court stated: "[Defense counsel] stood up and said "Your Honor." Rather than let counsel continue, this [c]ourt, anticipating counsel was asking for a mistrial, stated "Granted[.]". Trial Court Opinion, 5/8/15, at 2. The trial court "conced[ed] there was no specific request for mistrial and better practice would have been to have waited for a specific request for a mistrial. Under the circumstances, however, this [c]ourt genuinely

believed [Appellant] was seeking a mistrial." ***Id.*** at 3. To the contrary, defense counsel later indicated it would have been his desire to discuss other options.

Finally, it appears the trial court assumed that the jury "will disregard judicial instructions admonishing them to disregard improper evidence[.]" ***Balog***, 576 A.2d at 1098. "Whether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all circumstances." ***Richardson***, 437 A.2d at 1165. Here, there is no indication whether the trial court considered less drastic measures, such as a curative instruction, or why a curative instruction would not have cured the prejudice, or considered "the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal[.]" ***Walton***, 352 A.2d at 8. Accordingly, we must conclude the mistrial was not manifestly necessary.

Lastly, the trial court suggested that Appellant waived his double jeopardy claim for failure to raise it promptly. We disagree. As noted above, Appellant's counsel did not have an opportunity to object until after the court cleared the courtroom. Order, 1/11/16, at 2; N.T. Post-Trial Hearing, 2/13/15, at 5. Nonetheless, even if Appellant did not object or specifically raise the double jeopardy ground, he would not have waived his double jeopardy claim. ***See, e.g., Bartolomucci***, 362 A.2d at 239 (mere silence by a defendant or lack of specific objection to the *sua sponte*

declaration of mistrial by the trial court is not sufficient to waive defendant's "very important constitutional right" of protection from double jeopardy).

The trial court also opined that Appellant's conduct following the declaration of mistrial should be construed as a waiver because he essentially acquiesced to the trial court's decision. Trial Court Opinion, 5/8/15, at 4. As noted above, however, the record shows that Appellant objected to the ruling as soon as feasible under the circumstances. Order, 1/11/16, at 2; N.T. Post-Trial Hearing, 2/13/15, at 5.

As discussed above, the trial court made the following findings:

4. [Appellant's] [c]ounsel at that point stood up and said, "Your Honor."

5. The [trial] court in one continuous statement said, "Granted," and advised the jury that the court was declaring a mistrial and ordered the courtroom cleared.

6. The [trial] court stepped down from the bench so he could speak to the jury to explain what had occurred.

7. As the the [sic] [trial] court was walking toward the jury box, counsel for [Appellant] again stated, "Your Honor".

8. The [trial] court next reaffirmed its order that the courtroom be cleared.

9. When the courtroom reopened, counsel[13] again approached the bench and asked the court to reconvene.

_____

[13] Apparently, the trial court was referencing Appellant's counsel.

10. The [trial] court indicated there would be no court reporter available as it was the lunch hour, and we would reconvene after the lunch hour.

11. The [trial] court reconvened immediately after the lunch hour.

12. [Appellant's] [c]ounsel at that point in time put on the record an objection to the [trial] court *sua sponte* granting a mistrial and made a motion that [Appellant] be barred from retrial.

Order, 1/11/16, at 2.

Appellant attempted to obtain the court's attention immediately after the trial court ordered a mistrial *sua sponte*; however, the trial court did not respond. "One must object to errors, improprieties or irregularities at the earliest possible stage of the criminal . . . adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." ***Commonwealth v. Rosser***, 135 A.3d 1077, 1086 (Pa. Super. 2016) (quoting ***Commonwealth v. Strunk***, 953 A.2d 577, 580 (Pa. Super. 2008)). Appellant's delay in raising such an objection was beyond his control and he raised it as soon as practical. Therefore, Appellant did not waive his double jeopardy challenge based upon the timeliness of his objection.

Because no manifest necessity existed warranting a mistrial, we are constrained to hold that the trial court abused its discretion. Therefore, we reverse the order denying Appellant's motion to dismiss the charges based on double jeopardy.

- 22 -

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/2017